## Blockinger *v.* Schweitzer, Appellant.

Argued October 8, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

T. J. *Reinstadtler*, with him *Frederick N. Egler*, and *Reed, Egler, McGregor & Reinstadtler*, for appellant.

*Homer W. King*, with him *Francis V. Sabino* and *Edward J. Lesko*, for appellees.

OPINION BY MR. JUSTICE MUSMANNO, November 9, 1965:

On August 15, 1958, at about 8 p.m., the plaintiffs in this case, Alma L. Blockinger and Marie E. Blockinger, were riding in a car proceeding westwardly on Route 51 in Pittsburgh. This highway, which consists of four lanes, is separated in the center by a medial strip 8 inches high, thus clearly separating, by a physical barrier, the eastbound traffic from the westbound traffic.

The defendant, Clarence J. Schweitzer, was driving, at the time indicated, a Pontiac station wagon in an eastwardly direction on that highway. Suddenly and without warning to those on the other side of the road, he leaped the medial strip, crashed head on into the Blockinger automobile, caromed away and struck a truck in the rear, and then, like a wildly charging bull, returned to gore the Blockinger car again, following which he went on to smash into a third vehicle.

In the lawsuit which inevitably followed, the defendant attempted to excuse his turbulent conduct by saying that his car skidded. There was a time when the word "skidding" was a magic word and its mere pronouncement exonerated the driver of the skidding car from responsibility for the accident of which he was the author. That strange doctrine is now happily sepulchered for good.* The motorist who says that skidding caused his car to be operated in a wrong direction on that part of the highway where he has no right to be at all must show that he was as innocent of fault as a child riding a tricycle on the sidewalk outside the Sunday School from which he has just emerged.

The explanation of the defendant as to why he jumped the eight-inch medial barrier, even accepted in the light most favorable to his point of view, still leaves a great deal to be desired in establishing absence of negligence. He says that while driving 35 miles per hour on Route 51 in the inner or faster lane, a car on the outer or slower lane cut in ahead of him and, in the application of his brakes to avoid striking that car, he skidded. Since the accident happened in an area absolutely prohibited to him, he had the burden of proof of showing that he got there through no negligence of his own.

The traffic situation on the highway at that hour was such that he could well have anticipated the possibility of someone trying to get into the accelerated line of travel. The slower lane had been held up for some unexplained reason and cars had been "backed up" for a quarter of a mile. It is common knowledge that motorists compelled to travel at a turtle's crawl in their own lane will, when they see the slightest empty space in the other lane, attempt a rabbit's leap to that lane in order to escape from their seemingly unending misery.

---

* *Campbell v. Fiorot*, 411 Pa. 157.

The courts can take judicial notice of the fact that the American motorist, generally speaking, is impulsive, impatient, impetuous and, under certain conditions, impossible. To gain a minute's time he may imperil the lifetime of others, with himself in the bargain. Thus, where there is a tedious delay in one lane of travel, those in the other more rapidly-moving lane must be on the alert against the imprisoned motorist making a rapid maneuver to escape from his asphalt prison. Zigzagging, rabbit lurches, sudden bursts of speed are all to be expected from the headlong motorist determined to gain that one minute which, he believes, will achieve for him an earlier dinner, a quicker approach to the consoling beverage, or the advantage of an earlier arrival than his rival at a common rendezvous.

While no motorist has to expect what is beyond the ken of human experience, the defendant here, in view of the unusual circumstances of the held-up line, could not exclude the happening of what took place. It was his duty, therefore, to have his car under control so that he could slow down or even stop to avoid colliding with the headlong rabbit driver.

If he had had his station wagon under control, was not driving at an excessive speed, and observing the rules of the road generally, he would not have skidded. The road was dry, the weather clear, it was summertime. The trial judge believed, after hearing the evidence and observing the witnesses, that a verdict for the plaintiffs would be inevitable. When the verdict, instead, came back in favor of the defendants, he ordered a new trial because he believed that somewhere along the line, inexplicable chance had skidded into justice. He used his best discretion in reaching this conclusion and we find that he did not abuse it in doing so.

Orders affirmed.

Mr. Justice COHEN and Mr. Justice EAGEN concur in the result.

Dissenting Opinion by Mr. Chief Justice Bell:

The questions involved were purely factual jury questions; the verdict for defendant was not against the weight of the evidence and there was no error of law or any adequate justification for a new trial.

For these reasons, I dissent.

Mr. Justice Jones and Mr. Justice Roberts join in this Dissenting Opinion.