463 A.2d 438

**Homer A. BOHNER and Frances W. Bohner, His Wife, Appellants,**

v.

**Jeffrey R. STINE.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1982.

Filed July 15, 1983.

Petition for Allowance of Appeal Denied Feb. 3, 1984.

See also, 436 A.2d 705.

428

Bruce D. Desfor, Harrisburg, for appellants.

David E. Lehman, Harrisburg, for appellee.

Before BROSKY, ROWLEY and MONTGOMERY, JJ.

PER CURIAM:

Following an automobile collision which occurred on October 1, 1976, plaintiffs-appellants filed an action in trespass against defendant-appellee seeking recovery for personal injuries and other damages. A jury trial was held before the Honorable Harold A. Sheely, and a verdict was returned in favor of defendant-appellee. Appellants' timely filed motion for a new trial was denied, and an appeal to this court was taken. The appeal was quashed as the verdict had not been reduced to judgment. *Bohner v. Stine,* 292 Pa.Super. 31, 436 A.2d 705 (1981). Judgment was thereafter entered and the instant appeal was perfected. We reverse the judgment of the trial court and remand for a new trial.

Appellants assert that the trial court's charge to the jury was misleading and an inaccurate statement of the law. They argue that the jury was not properly advised that skidding on a wet roadway is not, in and of itself, justification for crossing the center line; and, that the trial court's instructions regarding the shifting of the burden of proof to defendant-appellee, who crossed the center line, was misleading.

That portion of the trial court's charge which is relevant to appellants' specific claims reads as follows:

" ... these particular statutes [1] dictate the duty of care normally required of a person in the same situation as the defendant. Ordinarily the unexplained violation of these statutes or any one of them would constitute negligence as a matter of law. In this case, however, the defendant has presented evidence in excuse or justification for being on the other side of the road. He has explained it by saying that under these circumstances what he did, his car skidded.

When a driver permits his car to deflect from its cause [sic] and to skid across the highway into another car, the jury may infer that he was negligent. Under the circumstances here presented, the law says that the defendant who offers such an excuse has the burden of proof that he was on the other side without any fault of his own. Therefore, if you find that there was a violation of any of these three statutes, it would be evidence of negligence which you should consider along with all the other evidence presented on the question of whether the defendant was negligent."

▆▆▆▆ In evaluating a claim of erroneous instructions to the jury, we must analyze the court's charge in its entirety. *Morris v. Moss*, 290 Pa.Super. 587, 435 A.2d 184 (1981). A review of the above exerpt within the context of the entire charge evinces no error on the part of the trial court.

At the conclusion of the court's instructions to the jury, appellants requested that the court read several points for charge concerning issues of liability. Appellants asserted that the court had not adequately covered the shift of the burden of proof to appellee who was on the wrong side of

1. The trial court was referring to three specific sections of the Motor Vehicle Code of 1959, as amended, which he had read and explained to the jury: 75 P.S. § 1002(a) (Restrictions as to speed); 75 P.S. § 1004 (Drive on right side of highway); and, 75 P.S. § 1006 (Meeting of vehicles). These sections were repealed, and substantially similar statutory provisions were enacted, by the Act of June 17, 1976, P.L. 162, No. 81, as amended. The new provisions, effective July 1, 1977, are respectively, 75 Pa.C.S.A. § 3361 (Driving vehicle at safe speed); 75 Pa.C.S.A. § 3301 (Driving on right side of roadway); and, 75 Pa.C.S.A. § 3302 (Meeting vehicles proceeding in opposite direction).

the road at the time of the accident. The trial court refused the request on the ground that he had substantially covered the subject in his charge.

■ If a legally valid requested point for charge is sufficiently and adequately covered in the trial court's instructions to the jury, it is appropriate to deny the request. *Perigo v. Deegan*, 288 Pa.Super. 93, 431 A.2d 303 (1981); *Buchecker v. Reading Company*, 271 Pa.Super. 35, 412 A.2d 147 (1979).

. ■ Furthermore, this court in *Kenworthy v. Burghart*, 241 Pa.Super. 267, 282, 361 A.2d 335, 343 (1976), set forth the standard form of instructions to be given when evidence is presented in excuse or justification of a Motor Vehicle Code violation. The trial court herein followed the *Kenworthy* charge almost verbatim. He clearly, fairly and thoroughly covered the shifting of the burden of proof, the assured clear distance rule,[2] and weather and road conditions as they relate to the rule.

Appellants also claim that the trial court erred by not permitting trial counsel to explain the effect of the Pennsylvania No-Fault Motor Vehicle Insurance Act[3] (hereinafter "No-Fault Act") to the jury during opening and closing remarks. The court explained the propriety of the denial of the request by stating in response to the motion for a new trial that the jury never reached the issue of damages.

The legislature's findings and intended purposes are delineated in section 102 of the No-Fault Act. Pertinent portions of the section provide:

§ 1009.102 Findings and purposes

**2.** The assured clear distance rule requires that a driver must control his vehicle such that he can always stop within the distance which he can see. *Toff v. Rohde*, 208 Pa.Super. 411, 222 A.2d 434 (1966); *Metro v. Long Transportation Company*, 387 Pa. 354, 127 A.2d 716 (1957).

**3.** 40 Pa.S.A. § 1009.101 et seq.; Act of 1974, July 19, P.L. 489, No. 176, Art. I, § 101 et seq., effective in 12 months.

(a) Findings.—The General Assembly hereby finds and declares that:

.    .    .    .    .

(3) the maximum feasible *restoration* of all individuals injured and *compensation of the economic losses* of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is *essential to the humane and purposeful functioning of commerce;*

(4) to avoid any undue burden on commerce during the intrastate transportation of individuals, it is necessary and proper to have a Statewide low-cost, *comprehensive, and fair system of compensating and restoring* motor vehicle accident victims and the survivors of deceased victims;

.    .    .    .    .

(b) Purposes.—Therefore, it is hereby declared to be the *policy of the General Assembly to establish* at reasonable cost to the purchaser of insurance, *a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims.*   40 Pa.S.A. § 1009.102 (Emphasis added).

The above statutory language clearly indicates that the legislature intended the Act's primary purpose to be one of compensation or, in other words, damages. *Cf., Pennsylvania Assigned Claims Plan v. Insurance Commissioner of the Commonwealth,* 54 Pa.Cmwlth. 93, 420 A.2d 25 (1980).

■ Appellants' suit was founded upon the tort liability remedy preserved by section 301 of the No-Fault Act.[4] They argue that despite the compensatory nature of the Act, the jury should not have been asked to determine an

---

**4.** 40 Pa.S.A. § 1009.301 provides certain exceptions to the abrogation of tort liability under the No-Fault Act.   The exceptions include *inter alia,* losses which are noncompensable under certain other sections of the Act, and those losses which exceed specified threshold requirements of the Act.

issue of fault without first hearing an explanation of a statute which declares that Pennsylvania is a "No-Fault" jurisdiction. The court's instructions, however, negate appellants' assertions.

The jury was instructed that liability or fault could attach to defendant-appellee if they found that his negligence was the proximate cause of husband-appellant's injuries. This and other instructions included in the charge evince that a reasonable person serving as a juror could not have inferred that the existence of the No-Fault Act dictated a finding of no liability. The trial court, therefore, properly denied appellants' request. The action of the court is reinforced by the intended purpose of the Act, as a discussion of the Act could have served to confuse the jurors instead of enlightening them.

Appellants' next assignment of error is that the trial court erred when it refused to permit further exploration of the jury panel's background during voir dire. Prior to trial, appellants moved for permission to ask seventeen questions of the panel on voir dire examination. The trial court granted the motion as to twelve of the proposed questions and denied it as to the remainder. Appellants argue that the denied questions were necessary to expose any contingent financial interests in the outcome of the case which are not readily ascertainable from more general inquiries.

The sole purpose of voir examinations is to secure a fair, competent and impartial jury. *Bentiviglio v. Ralston*, 447 Pa. 24, 288 A.2d 745 (1972). Using these guidelines, the trial court determines the scope and extent of the examinations. *Lenkiewicz v. Lange*, 242 Pa.Super. 87, 363 A.2d 1172 (1976). Its rulings will not be disturbed on appeal absent a clear abuse of discretion. *Lenkiewicz v. Lange, supra.* Our review of the following proposed questions reveals that the trial court's denial was not an abuse of discretion.

7. Whether any member of the jury or their immediate families are stockholders in any company which, in whole

or in part, is engaged in the casualty or liability insurance business.

8.   Whether any member of the jury or their immediate families are now or have been employed as a claims adjustor or otherwise by a company or concern which, in whole or in part, was engaged in the casualty or liability insurance business.

11.   Whether any of the jurors have served on prior civil juries and if they have, whether they have ever heard of a case which they regard to be similar and further, whether they understand that each case is different and is to be decided on its own merits.

12.   Whether, if appropriately satisfied under the evidence and the law, any member of the jury would, for any reason, hesitate to award a substantial verdict.

17.   Have any of the prospective jurors read large advertisements in national news magazines advocating smaller damage awards or changes in our system of law which would limit a plaintiff's right to recover for personal injuries?

■■■   The preferred practice during voir dire examinations is to permit general inquiries regarding the direct or indirect interest of the jurors in the parties to, and the result of, the litigation.  *Price v. Yellow Cab Company of Philadelphia*, 443 Pa. 56, 278 A.2d 161 (1971).  The trial court herein permitted appellants to make several general inquiries designed to elicit information from prospective jurors relevant to any fixed opinions about, or interests in, the matter they were about to hear.  Appellants were also able to specifically ask whether any panel member was employed by an insurance company, and whether any was in the business of investigating claims.  We find, therefore, that questions seven and eight above were properly refused, and appellants were not denied the right to show bias or interest of the veniremen.

■■■   Proposed question number eleven was also properly denied as such an inquiry does not reveal competence or

436

incompetence to serve as a juror. *Commonwealth v. Corbin*, 426 Pa. 24, 231 A.2d 138 (1967).

■■■■■ As to number twelve, it has been determined that it is inappropriate to ask whether prospective jurors would be able to render a substantial verdict. *Selby v. Brown*, 250 Pa.Super. 134, 378 A.2d 862 (1977). Question seventeen evokes a different concern, however.

This inquiry invited responses which would not necessarily reflect a juror's *fixed* inability to render an impartial judgment. *Starr v. Allegheny General Hospital*, 305 Pa. Super. 215, 451 A.2d 499 (1982). Therefore, the only use for the question could have been to gain information for peremptory challenge purposes which is inappropriate. *See, e.g., Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292 (1977).

■■■■■ Finally, appellants assert that the verdict for defendant-appellee was against the weight of the evidence. We agree and grant a new trial on this question alone.

When reviewing a weight of the evidence question, we must consider all of the evidence presented. *Weaver v. Firestone Tire and Rubber*, 267 Pa.Super. 548, 407 A.2d 45 (1979). A new trial will be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. *Dixon v. Andrew Tile and Manufacturing*, 238 Pa.Super. 275, 357 A.2d 667 (1976).

There is no dispute as to the basic facts herein. The evidence offered by appellee at trial to justify the fact that his vehicle skidded into the oncoming lane of traffic, however, is insufficient to sustain a finding of no negligence. This determination is premised upon the legal maxim that a driver crossing the center line of a roadway, and thereafter causing a collision, is negligent *per se*. *Kenworthy v. Burghart, supra.*[5] The only evidence offered by appellee

5. See also the discussion hereinbefore regarding instructions to the jury when skidding is offered as the reason for crossing into the oncoming lane of traffic.

in an attempt to meet his burden of proof was that the road was wet, the car in front of him suddenly slowed down to make a turn,[6] and there were wet leaves in certain places on the road.

The condition of the roadway must be considered by a driver in regulating his speed and controlling his vehicle. 75 Pa.C.S.A. § 3361. Furthermore, under the "assured clear distance rule" a driver must have his vehicle under such control and operate it at such a speed as to safely stop within the assured clear distance ahead. *Brown v. Schriver*, 254 Pa.Super. 468, 386 A.2d 45 (1978). The sudden slowing or stopping of a vehicle ahead must be anticipated. *Kmetz v. Lochiatto*, 421 Pa. 363, 219 A.2d 588 (1966); and, *cf., Blockinger v. Schweitzer*, 419 Pa. 342, 214 A.2d 244 (1965).

The testimony offered by the investigating officer revealed that immediately after the accident appellee admitted to panicking and hitting his brakes harder than he had to, thereby losing control of his automobile on the wet roadway. Appellee did not deny making that statement when asked about it during cross-examination. Our review of all of the evidence adduced at trial relevant to the reasons for the skidding of appellee's car, when viewed in light of the applicable law, supports appellants' claim that the verdict was against the weight of the evidence.

The judgment of the trial court is reversed and a new trial is granted. We relinquish jurisdiction.

**6.** Neither the automobile nor the driver were ever located in order to corroborate appellant's testimony.