502 A.2d 1293

Thomas FARELLI, Individually and Thomas Farelli, Administrator of the Estate of Marybelle Farelli, Deceased, Appellant,

v.

Brian MARKO.

Superior Court of Pennsylvania.

Argued March 13, 1985.

Filed Dec. 31, 1985.

Louis J. Krzemien, Jr., Pittsburgh, for appellant.

Louis C. Long, Pittsburgh, for appellee.

Before DEL SOLE, HESTER and FEENEY, JJ.*

FEENEY, Judge:

The facts of this case essentially presented the jury with the solitary issue of whether the appellee's explanation for his cross-over was credible. The jury obviously found it to be credible. Because we believe that decision on credibility to be reasonable, and the appellee's explanation sufficient to support the verdict, we affirm.

In the early evening of June 18, 1979, a Chevrolet Monte Carlo driven by the appellee, Brian Marko, crossed over from the northbound lanes of traffic on Route 51 near

---

\* The Honorable John M. Feeney, Judge of the Court of Common Pleas of Allegheny County, is sitting by designation.

Pittsburgh's Liberty Tunnels and struck a southbound Volkswagon Rabbit containing the appellants, Thomas Farrelli and his wife, Marybelle Farrelli. Eyewitness testimony proffered by the appellants show that the Monte Carlo suddenly shot across the center line which divided the four lanes and collided with the front left area of appellants' car. Brian Marko testified that he was travelling in the right-hand, northbound lane of Route 51 when he suddenly pulled to the berm on his right in order to avoid a collision with a car which was rapidly overtaking him from the rear. Unable to get his car to return to the highway with a little turn of his steering wheel and quickly approaching a telephone pole, the appellee jerked the wheel to the left and was propelled as from a "slingshot" across two lanes and into the oncoming southbound Volkswagon.

After the jury returned a defense verdict, the Honorable Marion K. Finkelhor denied appellants' motion for a new trial. Thomas Farelli brought this appeal individually and as the administrator of the estate of his deceased wife.[1]

There are two questions for review:

1. Did the trial court commit reversible error by its use of the phrase "sudden emergency" in a memorandum accompanying the order denying the motion for a new trial after it had refused to instruct the jury on the sudden emergency doctrine?

2. In a cross-over case is a defendant's explanation of his presence on the wrong side of the road sufficient to support a defense verdict?

At trial, the court refused to instruct the jury that it could find that the defendant, Brian Marko, had been confronted with a "sudden emergency." Appellants, however, mistakenly believe that this refusal to so instruct and the jury's defense verdict are irreconcilable. The allegation that the trial court's memorandum which specifically mentions "sudden emergency" is inconsistent with its refusal to

1. Her death was unrelated to the accident.

charge the jury on "sudden emergency" is of little significance.

Assuming *arguendo* that its inclusion of the reference to a "sudden emergency" was intentional and erroneous, the verdict may nonetheless stand if the record facts support it. The Superior Court in *Cohen v. Jenkintown Cab Co.*, 300 Pa.Super. 528, 446 A.2d 1284 (1982) clearly noted:

"[i]t is the order, and not the opinion, which is controlling. The appeal is from the order, not the opinion." *Id.*, 300 Pa.Superior Ct. at 538, n. 8, 446 A.2d at 1289, n. 8.

■ Appellants' other argument, that the defense verdict is against the weight of the evidence, in essence claims that the trial court's denial of appellee's request for an instruction on the sudden emergency doctrine removed *as a matter of law* the only obstacle to a verdict in favor of the plaintiffs. When considering a motion for a new trial on the grounds that the verdict was against the weight of the evidence, all evidence must be reviewed. *Sperrazza v. Cambridge Mutual Fire Insurance Co.*, 313 Pa.Super. 60, 64 n. 3, 459 A.2d 409, 411, n. 3 (1983). The record discloses stories by the appellants and appellee. The jury apparently believed both stories. Does the evidence demand that the appellee's story not be believed? Witness credibility was the determinant. Brian Marko explained his actions and the jury believed him.

The distinguished Justice Musmanno once described, in very human terms, the circumstances where the grant of a new trial is in order:

"When a jury's finding is so opposed to demonstrated facts that, looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against a bizarre and erratic conclusion, it can be said that the verdict is shocking and unjust, and that a new trial is imperative." *Green v. Johnson*, 424 Pa. 296, 298, 227 A.2d 644, 645 (1967).

This was not the case here. The mention of "sudden emergency" which accompanied the denial of appellants'

motion for a new trial is of no importance since the record contains facts which make the defense verdict supportable.

It is beyond peradventure that: (1) a driver who crosses the center line of a roadway thereby causing a collision is negligent per se, *Bohner v. Stine,* 316 Pa.Super. 426, 463 A.2d 438 (1983); (2) unless such driver proves by the fair weight of the credible evidence that his vehicle was there through no negligence on his part, *Kenworthy v. Burghart,* 241 Pa.Super. 267, 361 A.2d 335 (1976). By the denial of the "sudden emergency" instruction request, the jury was prevented from utilizing that specific doctrine in its deliberations. Nevertheless, since this is a negligence case the fact finder is permitted to formulate the parameters of the duty of care and decide whether appellee's actions constituted a breach of that duty.

In its brief, appellants alleged that appellee's explanation for being on the wrong side of the road was insufficient to support a defense verdict as were those in the cases of *Denman v. Rhodes,* 206 Pa.Super. 457, 214 A.2d 274 (1965), allocatur denied (1966); *Blockinger v. Schweitzer,* 419 Pa. 342, 214 A.2d 244 (1965); *Herrold v. Waddington,* 394 Pa. 635, 148 A.2d 923 (1959); and *Bohner v. Stine,* 316 Pa.Super. 426, 463 A.2d 438 (1983). For the following reasons, these cases do not require a finding that the verdict in the instant case is against the weight of the evidence.

In *Denman v. Rhodes, supra,* three defense witnesses gave testimony which presented the jury with a prior inconsistent statement by the defendant and his admission of fault, both of which were absent in the instant case. The investigating police officer testified that Rhodes stated at the scene that he was travelling north and all of a sudden the road narrows down and he struck what he thought was a pothole, lost control of his car, veered across and hit a car travelling southbound. 206 Pa.Super. at 459, 214 A.2d at 275. The defendant then testified that the operator of the vehicle preceding the Denman automobile did not dim his

lights and "I pulled off the edge of the road and I fell into a rut ... and I pulled on my steering wheel to come up out of that rut and when I did it started to slide sideways." 206 Pa.Super. at 459, 214 A.2d at 275. Finally, one of the plaintiffs testified that the defendant said "that he was terribly sorry but it was his fault." 206 Pa.Super. at 459, 214 A.2d at 275. Had the jury in the instant case been faced with such facts its defense verdict would be less reasonable.

*Blockinger v. Schweitzer, supra,* involved the "assured clear distance" rule since the defendant's car skidded when a slower moving vehicle darted into the left lane in *front* of the defendant's car. The court also cautioned that the defendant must be on the alert for this act when the right lane of traffic is at a standstill. Unlike *Blockinger,* in the instant case the disrupting force was to Brian Marko's *rear,* and the traffic was not at a standstill. Finally, the plurality opinion by Justice Musmanno lacks precedential value as three justices dissented on the basis that the verdict was not against the weight of the evidence, and two justices concurred in the result but filed no opinion.

In *Herrold v. Waddington, supra,* the Supreme Court in affirming the grant of a new trial referred to a part of the trial court's opinion:

> "We feel that the testimony of the defendant in this case is so weak, vague and contradictory that the verdict was clearly against the weight of the evidence and that the plaintiff is, therefore, entitled to a new trial." *Id.,* 394 Pa. at 639, 148 A.2d at 925.

There the total absence of credibility in the defendant's testimony easily constitutes a factual distinction which precludes application of the *Herrold* court's reasoning to the instant case. One of the plaintiffs testified that the defendant, Mr. Waddington, came to her hospital room the day after the accident and told her that he did not remember how the accident happened and requested her to assist him

in making his police report of the accident. 394 Pa. at 637, 148 A.2d at 924. Thereafter, Mr. Waddington testified at a justice of the peace's hearing that he did not know how the accident happened nor how fast he was going. 394 Pa. at 637–38, 148 A.2d at 924. The defendant's incredible trial testimony is described by the court in the following excerpt:

"He testified that the plaintiff drove his car over into the defendant's lane of travel right in front of him and that the front of the Herrold car struck his car. He states that he began to get his memory back the day after the accident, that he had regained it somewhat by the time of the hearing before the justice of the peace ... and had regained it completely when he testified at the trial. Although he testified that the front of his car and the front of the Herrold car struck each other, his own exhibits show that this is not so. He stubbornly insisted on saying that the bumper on the Herrold car and the front end of the Herrold car were damaged when his own exhibits contradicted this. The exhibits show that the Waddington car was damaged in front and that the Herrold car was struck from the side. Taken in connection with his own exhibits the testimony of the defendant is incredible and should not be allowed to stand." 394 Pa. at 638, 148 A.2d at 925.

The testimony of Brian Marko in no fashion approaches that of Mr. Waddington which, in itself, supports the finding that the *Herrold* verdict was against the weight of the evidence.

Finally, *Bohner v. Stine, supra,* is not applicable to the instant case. There, the Superior Court commenting on the defendant's testimony stated:

"The sudden slowing or stopping of a vehicle *ahead* must be anticipated." 316 Pa.Super. at 437, 463 A.2d at 443. (emphasis added).

Brian Marko's evasive maneuver is not within the purview of the assured clear distance rule as one is not required to

anticipate that a vehicle might suddenly clip his *rear* fender as it overtakes him. Additionally, unlike Marko, the defendant in *Bohner* "admitted to panicking [sic] and hitting his brakes harder than he had to thereby losing control of his automobile on the wet roadway." 316 Pa.Super. at 437, 463 A.2d at 443.

This verdict is supported by credible evidence. Accordingly, the judgment of the lower court is affirmed.

DEL SOLE, J., joins in this opinion.

HESTER, J., files a dissenting opinion.

HESTER, Judge, dissenting:

I respectfully dissent. My review of the record and consideration of the applicable case law compels my agreement with appellant, Thomas Farrelli, that the trial court erred in denying his motion for a new trial.

Thomas and Marybelle Farrelli were traveling south on Route 51, a four-lane highway, at about 6:30 P.M. on June 18, 1979. Appellee, Brian Marko, and a passenger were traveling north on Route 51 at the same time. It is undisputed that appellee's automobile "shot like a slingshot" across the two northbound lanes of traffic and across the center line, striking the Farrellis in their southbound lane.

Brian Marko explained his presence in the Farrellis' lane as follows. He testified that he was driving in the extreme right lane of Route 51. He observed an automobile in his rearview mirror, also heading north in the far right lane, traveling "fast." As the automobile proceeded to move into the left northbound lane to pass him, Marko feared the overtaking automobile would strike him. He therefore drove onto the berm on the right. He attempted to return to the highway, but his automobile did not respond to the turn of the steering wheel. Seeing a telephone pole in his path, Marko "jerked the [steering] wheel a lot harder and

when both wheels came up on the road ... shot like a slingshot across the lanes...." The Farrellis sustained substantial injuries.

As noted by the majority, trial by jury culminated in a verdict in favor of Appellee Marko on December 10, 1982. The trial judge denied appellant's motion for a new trial and this appeal followed.

The cumulative effect of two aspects of this case convinces me that a new trial is required. First, as noted by the majority, the trial judge determined that the sudden emergency rule was inapplicable to the facts of this case, and accordingly denied appellee's points for charge based on this rule. However, the judge supported her denial of Mr. Farrelli's motion for a new trial with the very doctrine she had previously ruled could not be supported by the facts. The relevant portion of the court's opinion states, "[W]here the defendant is confronted with a sudden emergency which was in no way due to his own misconduct, such evidence will support a defense verdict." Appellant does not argue that the trial court's refusal to instruct the jury on the sudden emergency doctrine is irreconcilable with a defense verdict, as the majority states, but rather asserts that since the facts of this case preclude the applicability of the sudden emergency rule,[1] it was an error of law for the trial court to base its denial of appellant's motion for a new trial on that doctrine.[2] I agree.

However, that aspect of this case, though not insignificant, is not the crucial issue to be resolved. The majority states that assuming the court's reference to a sudden emergency was intentional and erroneous, the verdict may

1. The propriety of the trial judge's determination that the sudden emergency rule is inapplicable in this case is not before us in this appeal.

2. Appellee's suggestion that the trial court's choice of language was an inconsequential *faux pas* fails to adequately recognize the plain meaning of the language of the opinion. The trial court's use of the phrase "sudden emergency," in the context of the opinion, was obviously not inadvertent and cannot be so characterized.

stand if the facts support it. It is my view that the facts do not.

I am convinced that the jury's verdict in this case is against the weight of the evidence. In Pennsylvania, a driver who crosses the center line of a roadway thereby causing a collision is negligent *per se*. *Bohner v. Stine*, 316 Pa.Super. 475, 463 A.2d 438 (1983). *See also* 75 Pa.C.S. § 3301 ("Upon all roadways of suffcient width, a vehicle shall be driven upon the right half of the roadway...."). The burden then shifts to the driver to "prove by the fair weight of the credible evidence that his vehicle was there through no negligence on his part." *Kenworthy v. Burghart*, 241 Pa.Super. 267, 361 A.2d 335 (1976). The only evidence offered by appellee, in an attempt to meet his burden of proof, was that he feared an overtaking automobile would strike him.[3] He therefore drove onto the berm and "jerked" the steering wheel to the left in an attempt to reenter the highway before striking a telephone pole.

*Denman v. Rhodes*, 206 Pa.Super. 457, 214 A.2d 274 (1965), supports the grant of a new trial in this case, and the majority's reference to it does not adequately distinguish its applicability. In *Denman* a collision occurred on the appellants' proper side of the highway. The only evidence offered by the defendant/appellee was that the vehicle preceding the Denman automobile failed to dim its lights thereby causing the appellee to pull onto the berm of the road where he fell into a rut. When he tried to reenter the highway, he jerked the steering wheel and the automobile began to slide sideways. This court held that the weight of the evidence warranted a verdict for the plaintiffs/appellants, reversed and granted a new trial.

Appellee attempts to distinguish *Denman* by suggesting the defendant therein had a safe alternative course of

---

3. As in *Bohner v. Stine, supra,* the other driver was not located in order to corroborate appellee's testimony. Further, appellee failed to call as a witness the passenger in his automobile at the time of the collision.

action: stopping his vehicle and waiting until he could safely reenter the highway. This court could also engage in such imaginative speculation and suggest that Brian Marko, too, could have stopped his vehicle and waited to reenter the highway safely. Further, as noted *supra,* the parties herein were traveling on a four-lane highway. The phantom automobile, which Mr. Marko asserts prompted his hasty maneuvering onto the berm of the highway was, by appellee's own testimony, following the rules of the road.

[By appellee]

> I looked ahead of me to see where I was going ... and I looked in the rear view mirror again and the car was a lot closer.... He was just making his pass into the left hand lane, and I believed that he would have hit me in the back if I did not move over.

(R.58a). The above testimony merely establishes that when the overtaking automobile neared a slower moving vehicle, it properly moved into the left northbound lane to pass. Although Marko described the automobile as "coming fast," there was no testimony concerning its speed or the lawful speed limit on Rte. 51.

The majority also erroneously dismisses the applicability of *Bohner v. Stine, supra,* to the instant case. In *Bohner* this court determined that the evidence offered by the appellee was insufficient to sustain a finding of no negligence. In that case, the defendant/appellee, explaining why his automobile crossed the center line and collided with the vehicle properly there, stated that the automobile in front of him suddenly slowed to make a turn and there were wet leaves on the road's surface which caused his vehicle to skid.

Appellee attempts to distinguish *Bohner* by claiming that the appellee therein was not confronted with an emergency, as was Mr. Marko in the instant case. This reasoning is faulty in two respects. First, the trial court held that a sudden emergency defense was not applicable to the facts

of this case. Therefore, reliance upon that doctrine in support of the verdict is precluded. Second, it is certainly within the scope of experience that berms along highways do not offer the same surface conditions as roadways, and are frequently peppered with obstacles, much as it is within the scope of driving experience that sudden stopping on wet leaves might precipitate skidding and a loss of control. I disagree that *Bohner* is significantly distinguishable from the instant case so as to preclude its applicability.

The majority suggests that since the Marko vehicle drove onto the berm to avoid an overtaking automobile, as opposed to one traveling ahead, *Bohner* is not applicable. However, Brian Marko testified that the act which led to his automobile "[shooting] like a slingshot" across the center line was his jerking of the steering wheel to avoid a telephone pole, a telephone pole which appeared in the path *ahead.* Also significantly, much *like* the defendant in *Bohner,* Marko testified to subsequently jerking the steering wheel much harder than he did initially. I disagree that the applicability of *Bohner* to the facts of this case can be dismissed with this faulty reasoning by the majority.

I am firmly convinced, in light of *Bohner v. Stine, supra,* and *Denman v. Rhodes, supra,* that the verdict is against the weight of the evidence in this case. I call attention to appellee's testimony, surprisingly not underscored by appellant, that when Mr. Marko drove onto the berm he actually increased the speed of his vehicle.

Q  Now, at the time you began moving over to the right side of your lane to permit that vehicle to pass did you have any estimate as to the speed of your vehicle?

A  Thirty miles per hour.

Q  What about the speed of your vehicle throughout the episode? In other words, from the point that your right front steering [sic] wheel went into the berm, and thereafter. Can you tell the Jury anything about

114

the speed of your car? In other words, did it decrease, increase—

A  There was an increase, I believe.

Q  You mean your car speeded up?

A  Yes, I believe just a little bit.

(R. 59a–60a).

When reviewing a weight of the evidence question, we must consider all of the evidence presented. *Bohner v. Stine, supra.* Although an order refusing to grant a new trial is within the discretion of the trial court, that discretion is not absolute. *Carnicelli v. Bartram,* 289 Pa.Super. 424, 433 A.2d 878 (1981), citing *Decker v. Kulesza,* 369 Pa. 259, 85 A.2d 413 (1952). "[T]he trial judge may not hide behind the jury's verdict; he has a duty to grant a new trial when . . . the judicial process has resulted in the working of an injustice upon any of the parties." *Denman v. Rhodes, supra,* 206 Pa.Superior Ct. at 459, 214 A.2d at 275, quoting, *Kiser v. Schlosser,* 389 Pa. 131, 132 A.2d 344 (1957). "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Thompson v. City of Philadelphia,* 507 Pa. 592, 598, 493 A.2d 669, 672 (1985) (citation omitted). Indeed, in such a case the court has the duty to grant a new trial. *Denman v. Rhodes, supra.*

My review of the evidence, in light of the pertinent law, compels the conclusion that the jury's verdict was against the weight of the evidence in this case.

I would reverse the judgment and grant a new trial.