J-A10004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| L. GARY YINGLING, JR., GEORGE YINGLING AND JAMES G. YINGLING | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| LISA M. MYERS, RICHARD CURTIS YINGLING, BECKY M. BEVERIDGE AND GRCM YINGLING GROUP LLC. | |
| Appellants | |
| APPEAL OF:  LISA M. MYERS, RICHARD CURTIS YINGLING AND BECKY M. BEVERIDGE | No. 847 WDA 2015 |

Appeal from the Order April 28, 2015
In the Court of Common Pleas of Clearfield County
Civil Division at No(s): 2011-2081-CD

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 18, 2016**

Lisa M. Myers, Richard Curtis Yingling and Becky M. Beveridge (Appellants or Defendants) appeal *pro se* from the April 28, 2015 order that determined what property rights they had as opposed to the property rights of L. Gary Yingling, Jr., George Yingling and James G. Yingling (Appellees or Plaintiffs) to a 94-acre parcel of land in Clearfield County in this quiet title action.  We affirm.

On December 12, 2011, Appellees filed a quiet title action that eventually went to trial on April 13, 2015, and resulted in the entry of the order now on appeal. That order stated in its entirety:

AND NOW, this 28th day of April, 2015, consistent with the foregoing Opinion, it is hereby **ORDERED, DIRECTED and DECREED** as follows:

1. The Plaintiffs, **L. Gary Yingling, Jr., George R. Yingling and James G. Yingling**, have secured title to the following:

   (a) Approximately 44 acres surface rights currently identified by Clearfield County Assessment Map No. 116 - 09-4; and

   (b) An undivided 6/8th (3/4$^{ths}$) interest in the coal, gas, clay and other minerals underlying said 44 acre tract; and

   (c) An undivided 5/8th interest in the coal, gas, clay and other minerals underlying the 24.391 acre parcel currently identified by Clearfield County Assessment Map No. 116.09-27.

2. The Defendants, **Lisa M. Myers, Richard Curtis Yingling and Becky M. Beveridge**, have secured title to the following:

   (a) Approximately 24.391 acres surface rights currently identified by Clearfield County Assessment Map No. 116-09-27; and

   (b) An undivided 1/8th interest in and to the coal, gas, clay and other minerals underlying only that 24.391 acre tract.

3. The remaining interests relative to coal, gas, clay and other minerals underlying both the approximately 44 acre parcel, as well as the 24.391 acre parcel described above, were retained by the **Hamer** and **Muir** heirs.

4. The deed dated March 17, 2001 to be recorded at Instrument Number 201-103506 is hereby **declared null and void** and shall not be recorded. If said Instrument has already been

recorded, then it shall be stricken and be of no legal force and effect of any nature.

5. Other than as set forth in #2 above, the Defendants, individually and/or collectively, **are forever barred** from asserting any additional right, lien, claim, title or other interest of any nature in the subject approximate 44 acre parcel and the subject 24.391 acre tract.

Trial Court Order, 4/28/15 (emphasis in original) (entered on the docket on 4/30/15).

In its decision following trial, the court set forth the following extensive list of findings of fact:

1. The genealogy in this case is very important. The Plaintiffs, L. Gary Yingling, Jr., George R. Yingling and James G. Yingling, are brothers. The individual Defendants, Lisa M. Myers, Richard Curtis Yingling and Becky M. Beveridge are brother and sisters. The parties are cousins to each other.

2. This Quiet Title action involves a determination of the relative rights of the parties in and to the coal, gas, clay and other minerals underlying an approximate 94 acre tract of land (with adjustments due to previous out sales) situated in Graham Township, Clearfield County, PA, being more particularly bounded and described as set forth in the following deeds:

A. Deed dated May 23, 1900 from Henry Smeal, et ux to Orville Smeal recorded in DVV 111, Page 237;

B. Deed dated May 24, 1948 from Orville C. Smeal to Rubin Smeal and Max Smeal recorded in DVV 391, Page 191; and

C. Deed dated February 19, 1949 from Rubin Smeal, widower; Max Smeal and Wilda Smeal, his wife, to Orville C. Smeal, recorded in DVV 395, Page 54.

3. Orville Smeal, by virtue of the last deed described above, secured the surface of the land described in said deed as well as the "coal, gas, clay and other minerals" underlying the same.

4. All parties to this action trace title to the said Orville Smeal and the deed dated February 19, 1949 and recorded in DVV 395, Page 54.

5. Orville Smeal died testate on November 19, 1950. He was predeceased by his wife, Eva M. Smeal, who died February 5, 1944.

6. By virtue of the Last Will and Testament of Orville Smeal dated March 25, 1942 and recorded in Clearfield County Will Book Y, page 41 to Estate No. 20949, the Estate of Orville Smeal, including the subject real property, was devised equally between and among his eight (8) children, namely, Rubin Smeal, Kenneth Smeal, Max Smeal, Fred Smeal, Beatrice Hamer, Louis Williams, Betty Yingling and Marjorie Maurer, a/k/a Marjorie Muir. Orville Smeal named his sons, Matt Smeal and Fred Smeal, to act as Executors.

7. One of those eight heirs, <u>Betty Yingling</u>, therefore secured from the Orville Smeal Estate an undivided 1/8 interest in and to whatever rights Orville Smeal had in the real property including an undivided 1/8 interest in the "coal, gas, clay and other minerals."

8. The seven remaining children of Orville Smeal joined in a deed dated January 8, 1951 and recorded at DBV 410, page 406, transferring the said real property to Betty Yingling, but specifically "... excepted and reserved all the coal, gas, clay and other minerals…."

9. Betty Yingling did not join in the immediately aforesaid Deed as a Grantor, and was included therein only as a <u>sole</u> Grantee. Therefore, as of the date of deed (January 8, 1951), Betty Yingling owned the surface of the real property (by virtue of the deed and inheritance) as well as an undivided 1/8 interest in the "coal, gas, clay and other minerals" (by inheritance alone and not otherwise excepted and reserved). The remaining 7/8 undivided interest in the "coal, gas, clay and other minerals" were specifically reserved to the remaining seven heirs of the Orville Smeal Estate.

10. There was a Letter of Attorney dated May 14, 1951 and recorded at Book 80, Page 376 wherein Reuben Smeal, widower; Beatrice Hamer a[n]d her husband, Harry Hamer; Louise Williams and her husband, Wallace Williams; Marjorie Muir and her husband, Connor [Muir]; Betty Yingling and her husband, George Yingling; Kenneth Smeal and his wife, Cleda Smeal; appointed Max Smeal and Fred Smeal to act as their true and lawful attorneys relative to the oil and gas, clay or other mineral rights under the 94 acre parcel, more or less, as described in the prior deed recorded at DBV 395 -54.

11. By Deed dated October 27, 1954 and recorded as aforesaid in DBV 438, page 498, Betty Yingling transferred the real property, without exception and reservation, to herself and her husband, George Yingling as tenants by the entireties.

12. By Deed dated May 2, 1970 and recorded in DBV 560, page 442, George and Betty Yingling, his wife, transferred a portion (24.391 acres) of the real property to their son, George M. Yingling and his wife, Betty F. Yingling.  This Deed contained no mention of any items to be excepted and reserved.

13. Therefore, the said George M. Yingling and Betty F. Yingling, by virtue of this immediately aforesaid Deed, secured the surface rights in 24.391 acres together with the undivided 1/8 interest in the "coal, gas, clay and other minerals" underlying the 24.391 acre portion of the real property based upon the fact that Betty and George Yingling (the parents) at that time only owned said surface and 1/8 interest in the said "coal, gas, clay and other minerals" underlying the subject real property.

14. By Deed dated November 16, 1978 and recorded as aforesaid in DBV 773, page 71, some of the aforesaid Orville Smeal heirs (and where applicable, their respective spouses), namely Reuben Smeal, Kenneth Smeal, Max Smeal, Fred Smeal and Louise Williams transferred the previously excepted and reserved "... coal, gas, clay and other minerals ..." underlying the subject real property to "Betty Yingling and George Yingling, her husband.  **We specifically find that the "Betty and George Yingling" referenced as Grantees in DBV 773-71 are the grandparents of the Defendants herein for the reasons as set forth below.**

15. Neither the **Hamer** heirs nor the **Muir** heirs signed the immediately aforesaid Deed, thereby retaining their respective 1/8 interest.

16. The aforesaid Deed describes the original approximately 94 acre tract, which would have included the reserved rights underlying the 24.391 acre tract that had been transferred to George M. Yingling and Betty F. Yingling.

17. Therefore, as of November 16, 1978, George and Betty Yingling (the parents) owned approximately 44 acres of the real property surface together with an undivided $6/8^{th}$ interest in the "coal, gas, clay and other minerals" underlying the same, as well as undivided 5/8 interest in the "coal, gas, clay and other minerals" underlying the 24.391 acre tract. The said 24.391 acres of surface and the undivided 1/8 interest in and to the "coal, gas, clay and other minerals" were previously transferred as aforesaid to George M. Yingling and Betty F. Yingling. The remaining 1/4 (or $2/8^{ths}$) interest in coal, gas, clay and other minerals underlying both the 44 acres and 24.391 acre tracts were retained by the Hamer and Muir heirs.

18. Betty Yingling died in 1991. Her interest in the real property passed as entireties property by operation of law to her surviving husband, George Yingling (the parent).

19. By deed dated February 20, 1992 and recorded in DBV 1445, page 48, George Yingling, then a widower, transferred his resultant interests in the real property (utilizing the original 94 acre description as set forth in Plaintiffs' Exhibit "A") to his son, L. Gary Yingling and Cheryl Yingling, his wife.

20. Although the immediately aforesaid deed indicated that the transfer was "... subject to all exceptions and reservations contained in former deeds of record ..." it did not add additional language or describe additional rights excepted and reserved in that particular transfer.

21. By deed dated June _, 1992 and recorded in DBV 1467, page 438, L. Gary Yingling and Cheryl Yingling, his wife (the parents) transferred whatever rights they secured from George Yingling, as aforesaid, to their sons, L. Gary Yingling, Jr., George R. Yingling and James Gregory Yingling, the three (3) Plaintiffs herein.

22. The said George M. Yingling (son of Betty Smeal Yingling and George Yingling) died testate on or about September 30, 2008, having been predeceased by his wife, Betty F. (or Betty Fay) Yingling, who died on November 11, 1993.

23. By virtue of the Last Will and Testament of the said George M. Yingling (son) dated May 5, 1998 (specifically paragraph 5) recorded in Centre County, all the right, title and interest of the said George M. Yingling and Betty F. Yingling (the children) secured as aforesaid from George and Betty Yingling (the parents) were devised and otherwise became vested in Richard Curtis Yingling, Lisa M. Myers and Becky M. Beveridge, the individual Defendants herein.

24. All parties stipulated that the critical issue for the court to decide is who exactly were the intended Grantees of the November 16, 1978 Deed, recorded in DBV 773, page 71. The Grantees were listed as "Betty Yingling and George Yingling, her husband.["] The issue to be decided was whether this refers to Betty Smeal Yingling and her husband, George Yingling (the parents) or to George M. Yingling and his wife, Betty Fay Yingling (the children).

25. During the trial, the Plaintiffs presented the testimony of every potential Grantor/signatory of the November 16, 1978 deed who is alive and competent. Each witness confirmed that the intended grantees of the 1978 deed were Betty Smeal Yingling and George "Jiggs" Yingling - the grandparents (and not the parents) of the Defendants herein.

26. Plaintiffs' witness, **L. Gary Yingling, Sr.**, confirmed that his parents were George (no middle initial) and Betty J. Yingling. He further confirmed his father was known as "Jiggs" and that his parents utilized the address of RD #2, Box 382, Morrisdale, PA.

27. Plaintiffs' witness, **Christine Hamer**, testified that she was familiar with the "Old Yingling Farm." She was married to Lionel Clayton Hamer. Lionel's mother was Beatrice Hamer, who was the sister of Betty J. Smeal-Yingling. This witness confirmed that Max Smeal was the Executor of his father's estate (Orville Smeal) and that Max went house-to-house to the various heirs to see if they would sign over their respective mineral rights to Betty J. Smeal-Yingling and George ("Jiggs") Yingling. She

- 7 -

confirmed that her husband, Lionel Hamer, refused to sign, and that the intended grantees in the 1978 deed were <u>Betty J. Smeal-Yingling</u> and <u>George ("Jiggs") Yingling</u>.

28. Plaintiffs' witness, **Thomas Muir**, testified that his parents were Connor A. & Marjorie E. (Smeal) Muir. Marjorie's parents were Orville and Eva Smeal. Mr. Muir confirmed that his family retains a 1/8 interest in the mineral rights (as he refused to sign the 1978 deed) and that the intended grantees of the 1978 deed were his <u>Uncle George ("Jiggs") and Aunt Betty J. Smeal-Yingling</u>.

29. Plaintiffs' witness, **Linda Muir**, is the surviving wife of Leon C. Muir (one of two sons of Marjorie Smeal). She confirmed that she and her husband refused to sign the 1978 deed, but understood that the intended grantees were <u>George ("Jiggs") and Betty J. Smeal-Yingling</u>.

30. Plaintiffs' witness, **Patricia Smeal**, pointed out in [her] testimony that the reason Max Smeal and Fred Smeal (sons of Orville Smeal) wanted George ("Jiggs") and Betty J. Yingling to receive the mineral rights is that they had farmed the land and they had maintained the house after Orville Smeal died. Ms. Smeal testified that "Uncle Max felt they deserved it."

31. Plaintiffs' witness, **Edward J. Hamer**, is the son of Harry and Beatrice Smeal-Hamer (one of Orville and Eva Smeal's 8 children). He confirmed that he refused to sign over the mineral rights, and stated that five (5) of heirs signed their respective rights over to <u>George "Jiggs" and Betty J. Yingling</u> and that the latter were the intended grantees of the 1978 deed.

32. Plaintiffs' witness, **George R. Yingling**, testified that he found the original 1978 deed in his grandparents' bedroom in a green box along with other important papers. His <u>grandparents</u> were <u>George "Jiggs" Yingling and Betty J. Smeal-Yingling</u>.

33. At the time of discovery of the 1978 deed, George R. Yingling was with his twin brother L. Gary Yingling, Jr. (whose proffered testimony was corroborative to his brother's testimony).

34. We specifically find the testimony of each and every witness who testified during the Plaintiffs' case to be credible in all respects.

35. We do not accept the testimony of the Defendant, **Becky Beveridge**, that she personally prepared the 1978 deed to be credible. Nor do we place any weight on any of the other exhibits admitted on behalf of the Defendants not otherwise mentioned herein.

36. The Defendants acknowledge that the 1978 deed is a valid deed. It is their position that the "Betty Yingling and George Yingling" referred to in said deed are their parents.

37. **Based upon the testimony/evidence and our findings of fact as set forth above, we specifically find that the grantees of the 1978 deed were not the parents of the individual Defendants, but instead their grandparents - Betty J. Smeal-Yingling and George ("Jiggs") Yingling**.

Trial Court Opinion, 4/28/15, at 4-9 (emphasis in original; citations to exhibits in the record omitted; entered on docket on 4/30/15). Based upon these findings, the court issued its order now on appeal, which we have quoted above.

Thereafter, on May 6, 2015, Appellants filed a motion for reconsideration that included nine allegations of error plus eight additional pages of discussion. On May 26, 2015, the court denied and dismissed the motion for reconsideration, which was accompanied by an opinion that attempted to address the arguments raised in Appellants' motion for reconsideration. *See* Trial Court Opinion, 5/26/15. On that same day, Appellants filed a notice of appeal. Thereafter, on May 29, 2015, the court issued an order, directing that Appellants file a concise statement of errors

complained of on appeal pursuant to Pa.R.A.P. 1925(b). In response, on June 5, 2015, Appellants filed a document entitled "Judge Sullivan's errors and laws broken," which we designate as Appellants' "Rule 1925(b) Document." That Document contained a list of 24 numbered paragraphs in which Appellants complain in a confusing manner about numerous errors by the trial court, some of which do not appear to have been objected to at the time they occurred.[1] Nevertheless, the trial court appears to have accepted the Document filed by Appellants in lieu of a "concise statement." Then, in its Pa.R.A.P. 1925(a) opinion, the court explained that its prior two opinions "adequately address[ed] the allegations of errors raised on appeal … [and that it would] simply rest on the record." Trial Court 1925(a) Opinion, 5/22/15, at 5.

Now, on appeal to this Court, Appellants set forth the following two issues for our review:

---

[1] Some of the alleged errors suggest a private court meeting with Appellees' attorney, that the court allowed witnesses to testify by telephone over Appellants' objection, that although the court ordered sequestration of witnesses it did not enforce that order, that Appellants were prejudiced because Becky Beveridge had to step in to question witnesses due to Richard Yingling's ill health, that the court discriminated against Becky Beveridge because he did not believe her testimony about typing the deed at issue when she was 14 years old, that the court forced the parties to conclude the matter in one day of trial, that the court refused to review the documents submitted by Appellants, and that the court had pre-judged the case before the trial was held. *See* Appellants' Rule 1925(b) Document, 6/5/15.

I Whether the trial court abused its discretion in granting title to the subsurface to the Appellees, which was contrary to the Deed and the intent of the grantor?

II. Whether the trial court abused its discretion in weighing the evidence, including the inconsistent testimony of the witnesses which conflicted with the inheritance tax document resulting in an unfair trial that deleted the Appellants' interest in the Property in violation of their constitutional rights?

Appellants' brief at 9.

We begin by noting that when "reviewing an action to quiet title, 'an appellate court's review is limited to determining whether the findings of fact are support by competent evidence, whether an error of law has been committed, and whether there has been a manifest abuse of discretion.'" *Regions Mortg., Inc. v. Muthler*, 889 A.2d 39, 41 (Pa. 2005) (quoting *Vernon Twp. Volunteer Fire Dep't, Inc. v. Connor*, 855 A.2d 873, 879 (Pa. 2004)). Moreover,

> [w]hen construing a deed, a court's primary object must be to ascertain and effectuate what the parties themselves intended. *Mackall v. Fleegle*, 801 A.2d 577, 581 (Pa. Super. 2002). The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. *Id*. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. *Id*. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. *Id*. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it. *Id*. … To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed. *Id*.

- 11 -

***Consolidation Coal Co. v. White***, 875 A.2d 318, 326 (Pa. Super. 2005).

In reviewing both of Appellants' arguments as stated in their brief, it is evident that they are claiming error by the court in its credibility determinations. Appellants relate facts that support their position, and overlook the court's resolution of conflicts in testimony that counter their position. Essentially, Appellants argue that the court should have believed their witnesses and evidence and not the witnesses and evidence presented by Appellees. This is clearly a weight claim, which we address in accordance with the dictates set out by this Court in ***Haan v. Wells***, 103 A.3d 60 (Pa. Super. 2014):

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***In re Estate of Smaling***, 80 A.3d 485, 490 (Pa. Super. 2013) (citing ***Commonwealth v. Clay***, 64 A.3d 485, 490 (Pa. 2013)). "The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." ***Samuel-Bassett v. Kia Motors Am., Inc.***, 34 A.3d 1, 39 (Pa. 2011). The trial court may award a judgment notwithstanding the verdict or a new trial "only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate

> review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." *Id*. (citing *Commonwealth v. Cousar*, 928 A.2d 1025, 1035 (Pa. 2007)). When a fact finder's verdict is "so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking." *Farelli v. Marko*, 502 A.2d 1293, 1295 (Pa. Super. 1985) (quoting *Green v. Johnson*, 227 A.2d 644, [] (Pa. 1967)).

*Id.* at 70.

Having reviewed the record, including Appellants' claims of error in their "motion for reconsideration" and in their Rule 1925(b) Document, and the court's initial opinion and its second opinion, we conclude that the court did not abuse its discretion in rejecting Appellants' arguments. The court's findings, which encompass its credibility determinations, are supported by the record. Moreover, as stated previously, "[t]he factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Haan*, 103 A.3d at 70. That is exactly what the court did here. Additionally, the verdict does not shock our sense of justice. *Id.* Thus, we conclude that Appellants are not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/18/2016