446 A.2d 1284

**Claire COHEN and Lipman Cohen, Appellants,**

v.

**JENKINTOWN CAB COMPANY and/or Jenkintown Taxi Company.**

Superior Court of Pennsylvania.

Argued June 11, 1980.

Filed April 23, 1982.

Rehearing Denied July 15, 1982.

Petition for Allowance of Appeal Sept. 9, 1982.

Fred Lowenschuss, Philadelphia, submitted a brief on behalf of appellants.

James M. Marsh, Philadelphia, for appellee.

Herbert Somerson, Philadelphia, for participating parties.

Before PRICE, WICKERSHAM and LIPEZ, JJ.

LIPEZ, Judge:

After the second trial[1] of this negligence action, plaintiffs obtained a judgment for $150,000 against the defendant cab companies. Defendants appealed that judgment, and this court affirmed per curiam. *Cohen v. Jenkintown Cab Company*, 282 Pa.Super.Ct. 625, 425 A.2d 850 (1980). While that appeal was pending, the court below entered five orders, all dated August 21, 1979. From these five orders, plaintiffs took this appeal. Plaintiffs have abandoned any challenge to three of the orders by failing to raise any issue concerning them in their brief.[2] We shall dismiss the appeal as to those three orders.

The two remaining orders granted petitions by the defendants' insurer, appellee National Indemnity Company. One was a petition to intervene, which the court below granted solely to allow National Indemnity to pursue the other petition, which was captioned as a "Petition for Leave to Pay Funds into Court." Besides the questions of whether these two petitions were properly granted, we must also decide National Indemnity's motion to quash this appeal, which this court en banc has referred to this panel by per curiam order, stating, "AND NOW, December 11, 1979, decision on the within Motion to Quash is hereby deferred until oral argument and review of the briefs and record on the appeal dismissal issue, along with other issues on the merits." We shall deny the motion to quash, affirm the order granting National Indemnity leave to intervene, and

1. The first trial had resulted in verdicts for the defendants, but the trial judge's grant of a new trial was affirmed by this court. *Cohen v. Jenkintown Cab Company*, 238 Pa.Super.Ct. 456, 357 A.2d 689 (1976).

2. The three orders as to which the appeal has been abandoned are listed on plaintiffs' notice of appeal as "Order Re Defendants' Motion for Protective Order of March 8, 1979," "Order Re Plaintiffs' Petition for Sanctions against Defendants and National Indemnity Company, Attempted Intervenor, of January 18, 1979," and "Order Re Plaintiffs' Petition for Disqualification of the law firm of LaBrum & Doak as Counsel for Defendants and National Indemnity Company of November 29, 1978."

reverse the order granting the petition captioned "Petition for Leave to Pay Funds into Court."

The issues in this appeal have been obscured by bitter procedural wrangling. The only thing on which the briefs for National Indemnity and the plaintiffs seem to agree (and in this they are correct) is that the lower court's order is inconsistent with the opinion in support of that order. To decide both the motion to quash and the appeal itself, we must first understand precisely what the so-called "Petition for Leave to Pay Funds into Court" requested and the order granted. This in turn can only be understood in light of what led National Indemnity to file its petition in the first place—our Supreme Court's decision in *Incollingo v. Ewing*, 474 Pa. 527, 379 A.2d 79 (1977).

Like this case, *Incollingo* involved the issue of an insurance company's liability for interest on a judgment against its insured when the amount of the judgment exceeds the policy limit. Like National Indemnity in this case, the two insurer appellees in *Incollingo* had $10,000 policy limits, vastly exceeded by the amount of the judgment against their insureds. One of the insurers, Firemen's, had relevant policy provisions very similar to National Indemnity's. Firemen's provisions were quoted in *Incollingo* as follows:

"With respect to such insurance as is afforded by this policy, the company shall:

(a) defend any suit against the insured alleging . . . injury and seeking damages on account thereof . . .

. . . . .

(b)(2) pay all expenses incurred by the Company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in the Court such part of such judgment as does not exceed the limit of the Company's liability thereon . . . and the amounts so incurred, except settlement of claims and suits, are payable

by the Company in addition to the applicable limit of liability on this policy.

*Incollingo v. Ewing, supra,* 474 Pa. at 531, 379 A.2d at 81.

The Court first rejected Firemen's contention that it owed no interest because it could not be liable for any amount in excess of its $10,000 policy limit, stating:

> We adhere to the general rule stated in *Hafer [v. Schauer,* 429 Pa. 289, 239 A.2d 785 (1968)] that absent an insurer's agreement to do so, an insurer is not liable for interest in excess of policy limits. We hold today, however, contrary to *Hafer,* that when an insurance company contracts with an insured to "pay . . . all interest accruing after entry of judgment," Pennsylvania law requires that the defendant pay interest computed from the date of verdict to the entry of judgment and interest on the amount of the judgment entered thereafter.

*Id.,* 474 Pa. at 537, 379 A.2d at 84. The Court also rejected an alternative argument by Firemen's as follows:

> Firemen's argues that its interest liability should be calculated on the basis of the ratio of its policy limit to the judgment. We find Firemen's argument without merit. Here again the contract between insured and insurer is controlling. Firemen's easily could have limited its interest liability on a large judgment against its insured to that portion of the judgment covered by its policy. No such provision appears in the contract between Fireman's [sic] and its insured. We read Firemen's policy as saying, in effect, it will pay all interest on the judgment until it tenders its part of such judgment, not as saying it will pay interest on *its part* of the judgment until it tenders its part of the judgment.

*Id.,* 474 Pa. at 538, 379 A.2d at 85 (emphasis in original).

Because of *Incollingo,* even though National Indemnity had a policy limit of $10,000, its liability for interest on the full $150,000 judgment was continuing to accrue while the appeal from the judgment was pending. In an effort to stop the running of interest, National Indemnity filed the docu-

ment captioned "Petition for Leave to Pay Funds into Court," which stated in pertinent part:

4. The said Insuring Agreement II(b)(2) provides, inter alia, that the insurer will "pay . . . all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon", in this case $10,000.

5. In order to limit its liability for interest under this paragraph, your Petitioner desires to pay into this Court, to hold pending the outcome of the appeal which it is prosecuting on behalf of its insured, a sum equal to the limits of the policy plus interest on the verdicts up to the date of the payment into Court, a total of $23,875.00.

6. Under the terms of the policy, specifically "Exhibit A" hereto, your Petitioner's ultimate liability to its insured cannot exceed the said sum of $23,875.00, even if the verdicts totalling $150,000 should be sustained on appeal.

7. If this motion is not granted, your Petitioner would be seriously and irreparably prejudiced because its only alternatives would be to (a) pay the said $23,875.00 to plaintiff with the knowledge that the money can never be recovered if the verdicts are overturned on appeal, or (b) do nothing and have to defend a claim that it is obligated to pay not only its limits but interest on the verdicts until the date of payment, after appeal (if the appeal is unsuccessful) which interest would accrue at the rate of $750.00 per month for as long as the appeal is pending in the Superior and Supreme Courts.

WHEREFORE, your Petitioner prays this Honorable Court permit your Petitioner to pay the said sum of $23,875.00 into this Court, to be held pending the final appellate decision as to whether or not your Petitioner's insured is liable to plaintiffs above named.

The court below granted this petition in the following order:

And now, this 21st day of August, 1979, after oral argument on August 10, 1979, the petitioner's, National

Indemnity Company, Petition of National Indemnity for Leave to Pay Funds into Court of August 15, 1978, is granted.

The petitioner, National Indemnity Company, is granted leave to pay into court as of August 15, 1979, the sum of $23,875.00 to be held pending determination of this matter presently pending upon appeal in the Superior Court of Pennsylvania.

This order explicitly gave National Indemnity exactly what it had asked for in its petition—a judicial determination that National Indemnity could stop the running of interest on its liability by handing over to the court an amount sufficient to cover its liability up to the date the money was handed over. Under the terms of the order, as National Indemnity had requested, the money would be returned to National Indemnity if its insureds were ultimately successful on appeal; if they were unsuccessful, the money would satisfy National Indemnity's obligations in full with no additional interest liability from the time the money was placed with the court to the final adjudication of the matter.

Given these facts, we can easily dispose of National Indemnity's motion to quash. National Indemnity's brief contends that plaintiffs lack standing to challenge the lower court's orders granting National Indemnity's petitions.

Our cases dealing with standing have been summarized in *Wm. Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975):

> "The core concept, of course, is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law."

464 Pa. at 192, 346 A.2d at 280–81 (plurality opinion). Accord, e.g., *Independent State Store Union v. Pennsylvania Liquor Control Board*, 495 Pa. 145, 432 A.2d 1375

(1981). Moreover, "the relationship between the challenged action and the asserted injury must be direct and immediate, not a remote consequence." *Independent State Store Union, supra,* 495 Pa. at 154, 432 A.2d at 1380. *Application of El Rancho Grande, Inc.,* 496 Pa. 496, 503, 437 A.2d 1150, 1153 (1981).

■ The effect of the orders appealed in this case was to reduce the amount of interest plaintiffs would be able to collect from National Indemnity on the judgment they had against its insureds, the defendant cab companies. It could hardly be clearer that plaintiffs have a direct, immediate and substantial interest, which is particular to them, in the amount of interest they will be able to collect from the defendant's insurer.[3] The motion to quash must therefore be denied.

■ We can also easily dispose of plaintiffs' first contention—that under Rule of Appellate Procedure 1701(a),[4] the lower court had no jurisdiction to enter the orders granting National Indemnity's petitions after the appeal had been taken from the judgment against National Indemnity's insureds, the defendant cab companies. Rule of Appellate Procedure 1701(c),[5] however, provides that the lower court's

3. While National Indemnity's brief devotes much space to this issue, we have not discussed it at length, because we find the brief's contentions confusing as well as occasionally self-contradictory. Particularly baffling is the assertion that plaintiffs are strangers to the litigation. It is National Indemnity which is a stranger to the litigation. That is why it was necessary for National Indemnity to obtain leave to intervene in order to pursue its "Petition for Leave to Pay Funds into Court."

4. "(a) *General rule.* Except as otherwise prescribed by these rules, after an appeal is taken or a petition for allowance of appeal is filed in a matter or review of a quasijudicial order is sought, the lower court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701.

5. "(c) *Limited to matters in dispute.* Where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, or in a petition for review proceeding relating to a quasijudicial order, the appeal or petition for review proceeding shall operate to prevent the lower court or other government unit from proceeding further with only such item, claim or assessment, unless otherwise

deprivation of jurisdiction after an appeal is taken is limited to matters in dispute in the appeal. The question of National Indemnity's liability for interest on the judgment is not, and could not be, involved in the defendant cab companies' appeal from the underlying judgment. The court below thus correctly held that National Indemnity's petitions dealt with collateral matters on which it could properly act while the defendant cab companies' appeal was pending. *Cf. Commonwealth ex rel. Brown v. Brown*, 254 Pa.Super.Ct. 410, 414, 386 A.2d 15, 17 (1978); *see also Wilson v. Wilson*, 297 Pa.Super.Ct 14, 21–22, 442 A.2d 1189, 1192–93 (1981). Since this is plaintiff's only ground of attack on the order granting leave to intervene,[6] that order will be affirmed.

However, we agree with plaintiffs' one remaining contention, that the court below erred in granting the petition captioned as a "Petition for Leave to Pay Funds into Court." Despite its caption, the petition did not request leave to pay funds into court. As the court below correctly stated in its opinion:

> Money paid into court becomes the absolute property of the other party, *Baldwin Township School District v. Pittsburgh Terminal Coal Corporation*, 328 Pa. 17, 18–19 [194 A. 900] (1937), and the tenderer cannot ordinarily withdraw it or recover any part of it, even if he eventually prevails in the action. 15 Standard Pennsylvania Practice, Ch. 74, § 24. *Berkheimer v. Geise*, 82 Pa. 64, 67 (1876); *Haug et ux. v. Old Guard Mutual Insurance*, 4 D. & C.2d 436, 441–2 (1955); *see also*; 35 A.L.R. 1252; 74 Am.Jur.2d *Tender*, § 31; 86 C.J.S. *Tender*, § 65.

What National Indemnity's petition requested, and the lower court's order explicitly granted, was the right to get the money returned if the pending appeal were successful, while at the same time stopping the further accrual of National

ordered by the lower court or other government unit or by the appellate court or a judge thereof as necessary to preserve the rights of the appellant." Pa.R.A.P. 1701.

**6.** Plaintiffs objected to the intervention on additional grounds in the court below, but these have been abandoned on appeal.

Indemnity's interest liability if the appeal were not successful.

Plaintiffs contend, and we agree, that funds are not "deposited in court" as required by the policy to stop further accrual of the insurer's interest liability, unless the insurer relinquishes any claim to the money, making it the absolute property of the judgment holder even if the judgment is later reversed on appeal.[7] National Indemnity's petition did

**7.** The context of the phrase "deposited in court" in National Indemnity's policy is a standard clause providing that the company's interest liability continues to accrue "until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon." Thus "deposited in court" is set up in parallel with "paid" and "tendered." What these three methods of stopping further accrual of the company's interest liability are intended to have in common is that in each method, the company makes an amount equal to the limits of its total liability to date unconditionally and immediately available to the judgment holder. Apparently in recognition of this functional equivalency, the *Incollingo* opinion refers only to tender in interpreting the same clause in Firemen's policy: "We read Firemen's policy as saying, in effect, it will pay all interest on the judgment until it tenders its part of such judgment, not as saying it will pay interest on its part of the judgment until it tenders its part of the judgment." *Incollingo v. Ewing*, 474 Pa. 527, 538, 379 A.2d 79, 85 (1977) (emphasis deleted). If read literally, this statement in *Incollingo* seems to say that only tender, and not payment or deposit in court, will suffice to halt the accrual of the company's interest liability. We do not believe the intent of *Incollingo* is to read "paid" or "deposited in court" out of this standard insurance policy clause. Rather, *Incollingo* used the term "tender" as functionally synonymous with payment and deposit in court. While technically imprecise, this usage conveys the essentially correct meaning that all three methods of stopping the running of interest do the same thing—relinquish all claim to the money by the insurance company to the judgment holder. Such linguistic imprecision in this esoteric area is not uncommon. *See e.g.*, Blashfield, 8 Automobile Law and Practice § 345.6, at 471 ("The company is not liable for interest on the amount recovered in excess of the policy limits where it unconditionally paid or tendered into court its full policy limit, prior to a judicial demand.").

We have had nearly as much difficulty understanding the argument in National Indemnity's brief on this issue as we did on the question of standing. *See* note 3, *supra*. National Indemnity appears to be saying that we should ignore the meaning of "deposited in court" in other contexts (as a substitute for interpleader proceedings, for example) and interpret it as it is used in the insurance policy. With this, of course, we agree. What was said in *Incollingo v. Ewing, supra*, 474 Pa. at 534, 379 A.2d at 83, *quoting with*

not request this, and the order of the court below accordingly did not grant it.[8] Because the order allows National Indemnity to stop the accrual of its interest liability without

approval *Hafer v. Schauer,* 429 Pa. 289, 298, 239 A.2d 785, 790 (Roberts, J., dissenting) concerning the meaning of "verdict" and "judgment" is equally applicable in interpreting "deposited in court": "That these words have different meanings in other contexts is here irrelevant." As demonstrated above, the context of "deposited in court" in the insurance policy makes it clear that it merely provides for an alternative procedure which is the functional equivalent of a tender. *See* 26 A C.J.S. *Deposits in Court* § 1.b(2) at 471 & nn. 3–4 (1956).

8. The court below, apparently recognizing its error, attempted in its opinion to reinterpret its order as requiring National Indemnity to relinquish all claim to the money, making it immediately available to plaintiffs. Both parties in this appeal have correctly recognized that it is the order, and not the opinion, which is controlling. The appeal is from the order, not the opinion. *See Lengyel v. Black,* 293 Pa.Super.Ct. 297, 438 A.2d 1003 (1981). The opinion cannot be treated as an attempt to modify the original order. The opinion was filed more than three months after entry of the order. The court had no power to modify at that time, both because this appeal had already been taken and because more than 30 days had passed since the entry of the order. 42 Pa.C.S. § 5505. Furthermore, no party had requested modification of the order. Neither had National Indemnity's petition requested leave to pay money into court in the sense of relinquishing all claim to the money. Despite the use of the nomenclature of payment into court in the caption, the specific terms of the petition control over an erroneous use of nomenclature. *Cf. Van Brakle v. Lanauze,* 293 Pa.Super.Ct. 276, 279 n. 2, 438 A.2d 992, 993 n. 2 (1981). Similarly, although the lower court's order used the nomenclature of payment into court, it clearly granted what National Indemnity had requested in its petition by specifically providing that the money was "to be held pending determination of this matter presently pending upon appeal in the Superior Court of Pennsylvania."

We note that in one recent case, a panel of this court vacated the lower court's order and remanded for reconsideration because the trial court had concluded in its opinion that its order had been erroneous. *MNC Corporation v. Mt. Lebanon Medical Center, Inc.,* 294 Pa.Super.Ct. 405, 406, 440 A.2d 528, 529 (1982). It is not clear whether this procedure could be applicable to this case, since the court below reinterpreted its order in its opinion rather than concluding that the order had been erroneous. In any event, we do not view this procedure as mandatory, but merely as one method which might be the most expeditious way of resolving a procedural dilemma in some circumstances. We conclude that this would be a peculiarly inappropriate case for employing this procedure, as it would certainly cause further delay and probably cause more confusion, if that is possible.

relinquishing its claim to the money if the judgment is overturned on appeal, the order is not in accordance with the requirements of the policy and must be reversed.[9]

Motion to quash denied; order granting the "Petition of National Indemnity Company for Leave to Intervene" affirmed; order granting the "Petition of National Indemnity Company for Leave to Pay Funds into Court" reversed; appeal dismissed as to remaining three orders dated August 21, 1979.

9.  Plaintiffs also contend that $23,875.00, the amount which the lower court's order permitted National Indemnity to place with the court as of August 15, 1979, was approximately $9,000 less than National Indemnity's actual liability as of that date. We need not reach this question, since it necessarily follows from our reversal of the lower court's order that National Indemnity's interest liability continues to accrue.

We have also found it unnecessary to determine how many, and which, of the defendant cab companies National Indemnity insures. In its "Petition for Leave to Pay Funds into Court," National Indemnity asserted that it insured "at least one of the defendants." We have referred to National Indemnity's "insureds" throughout this opinion merely for convenience, and our use of the plural does not imply that we have made any finding on how many defendants National Indemnity insures.