COMMONWEALTH of Pennsylvania,
Appellee,

v.

Carlos GARCIA, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 7, 2000.
Filed March 23, 2000.

Carlos Garcia, pro se, appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before McEWEN, President Judge, and CAVANAUGH, DEL SOLE, KELLY, POPOVICH, HUDOCK, EAKIN, JOYCE and STEVENS, JJ.

JOYCE, J.:

¶ 1 This is a *pro se* appeal from the order of the trial court which denied the petition for permission to file post-sentencing motions/appeal *nunc pro tunc* filed by Appellant, Carlos Garcia. For the reasons set forth below, we reverse and remand for further proceedings. Before addressing the merits of Appellant's claims, we will briefly recount the pertinent facts.

¶ 2 In August of 1993, Jose Maldonado and his friends were at a McDonald's restaurant where they were accused by Appellant and his companion, Rolando Ortiz, of flirting with their girlfriends. A fight ensued during which Jose's nose was broken. As a result, Jose and his friends left the area and went to a hospital for treatment.

¶ 3 Jose and his friends again encountered Appellant and Ortiz at another fast food eatery later in the evening. During this incident, Jose and his friends dragged Appellant from his vehicle and proceeded to assault Appellant and Ortiz. At this time, Jose's older brother, Luis Maldonado, arrived. Luis told Appellant and Ortiz to leave Jose alone. Appellant and Ortiz departed, but threatened to return and exact vengeance.

¶ 4 Appellant and Ortiz subsequently obtained a .22 caliber rifle and cruised the streets in search of Luis and the other males with whom they had been fighting. Appellant saw Luis' vehicle while he was stopped at a traffic light. Luis was driving the car; his girlfriend, Brenda Vargas, was in the front passenger seat. Luis' sister, Luz Maldonado, and a male known as "Poker Sam" were seated in the rear of Luis' car.

¶ 5 Appellant and Ortiz approached Luis' vehicle. Appellant went to the passenger side while Ortiz went to the driver's side to preclude Luis from escaping. Appellant ripped off a piece of plastic that covered the passenger side window area and asked which of the occupants had hit him. Before anyone could answer, Appellant reached inside and shot Luis in the head.

¶ 6 Due to his gunshot wound, Luis hit the gas pedal and crashed the vehicle. The police were summoned to the scene, following which Luis was taken to the hospital where he was later pronounced dead. Appellant and Ortiz were subsequently arrested and charged with various offenses arising out of this incident.

¶ 7 The charges against Appellant and Ortiz were consolidated for trial. Both men waived their right to a jury trial. Consequently, a bench trial was held in December of 1994, following which the trial judge convicted Appellant of third degree murder,[1] recklessly endangering an-

---

1. 18 Pa.C.S.A. § 2502(c).

other person (REAP)[2] and possession of an instrument of crime (PIC).[3] The trial judge also found Ortiz guilty of third degree murder. Appellant was thereafter sentenced on March 2, 1995 to an aggregate term of twelve and one-half (12½) to twenty-five (25) years' imprisonment.[4] Neither post-sentencing motions nor a direct appeal were ever filed.[5]

¶ 8 Appellant took no action with respect to his case until September 16, 1997, when he filed a *pro se* document captioned as a "Petition for Permission to file Post–Sentence Motion, Nunc Pro Tunc." Notwithstanding its title, Appellant asserted in the petition that trial counsel was ineffective in failing to file a direct appeal despite being requested to do so by Appellant. *See* Petition for Permission to file Post–Sentence Motion, Nunc Pro Tunc, filed 9/16/97, at paragraphs 2 and 4–6. Appellant further filed a memorandum of law in which he cited caselaw supporting the reinstatement of his right to a direct appeal. *See* Memorandum of Law, filed 9/16/97, at 3. The trial judge summarily denied Appellant's petition. Appellant timely appealed.

¶ 9 By order entered in November 10, 1997, this Court quashed the appeal on the ground that it was interlocutory. In January of 1998, Appellant filed a petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546. For reasons that do not appear of record, this Court reinstated the appeal by order filed on January 26, 1998. The trial court thereafter summarily dismissed Appellant's PCRA petition due to the pendency of the appeal.

¶ 10 Although originally assigned to a panel for disposition, this Court *sua sponte* referred the case for *en banc* review. This matter thus is now ripe for disposition. Appellant presents the following issues for review: (1) whether the lower court erred in refusing to permit Appellant to file post-sentencing motions, *nunc pro tunc;* (2) whether the trial judge abused her discretion in sentencing Appellant by focusing solely upon the seriousness of the offense; and (3) whether the evidence was sufficient to support Appellant's convictions for REAP and, if so, whether the sentences for these convictions should merge.

¶ 11 We observe that, as phrased, Appellant's first issue focuses on the propriety of the trial court's refusal to permit Appellant to file post-sentencing motions *nunc pro tunc.* Appellant's Brief at 6. Nevertheless, Appellant's summary of argument and argument address his right to a direct appeal and trial counsel's ineffectiveness in failing to file the appeal despite being requested to do so by Appellant. Appellant's Brief at 10–12. Because we are cognizant of Appellant's *pro se* status, we will liberally construe his brief. *See, e.g., Mueller v. Commonwealth of Pennsylvania, State Police Headquarters,* 110 Pa. Cmwlth. 265, 267–269, 532 A.2d 900, 902 (1987) (indicating that pleadings filed by *pro se* litigants are to be construed liberally). Moreover, this Court has recognized that it is the specific terms of a document rather than the caption that controls. *Commonwealth v. Wesley,* 455 Pa.Super. 343, 348–350, 688 A.2d 201, 204 (1997) (citing *Cohen v. Jenkintown Cab Co.,* 300 Pa.Super. 528, 539, 446 A.2d 1284, 1289 n. 8 (1982)). We thus will reformulate Appellant's issue so that it conforms to the argument presented, *i.e.,* whether Appel-

---

2.  18 Pa.C.S.A. § 2705.

3.  18 Pa.C.S.A. § 907(a).

4.  Appellant received ten (10) to twenty (20) years' imprisonment for the murder. He was also sentenced to one and one-half (1½) to three (3) years for PIC and one (1) to two (2) years on each of his REAP convictions. The murder and PIC sentences were consecutive to each other. The sentences for REAP were directed to run concurrently with each other but consecutive to the murder and PIC sentences, thus resulting in the above aggregate sentence.

5.  Appellant was represented at trial and sentencing by Steven Segal, Esquire, and his assistant, Sheri Di Norcia, Esquire.

lant is entitled to a direct appeal *nunc pro tunc.*

¶ 12 An abuse of discretion standard governs our review of the propriety of a grant or denial of an appeal *nunc pro tunc. Commonwealth v. Stock,* 545 Pa. 13, 16, 679 A.2d 760, 762 (1996). As a general rule, an appeal *nunc pro tunc* is only granted in civil cases where there was fraud or a breakdown in the court's operations. *Id.,* 545 Pa. at 18, 679 A.2d at 763. However, in criminal cases, where counsel's conduct has adversely affected the right to appeal, the courts have granted an appeal *nunc pro tunc* on the basis that the defendant's right to appeal has been denied. *Id.* "Reading the civil cases and criminal cases together, the principle emerges that an appeal *nunc pro tunc* is intended as a remedy to vindicate the right to appeal where that right has been lost due to certain extraordinary circumstances." *Id.,* 545 Pa. at 19, 679 A.2d at 764 (italicization added). *Accord Commonwealth v. Peterkin,* 554 Pa. 547, 558 n. 7, 722 A.2d 638, 643 n. 7 (1998). We will review Appellant's claim with these considerations in mind.

¶ 13 The decisional authority in effect at the time Appellant's petition was filed provided that a defendant who had been deprived of the right to a direct appeal through the ineffectiveness of counsel was afforded no relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546, unless he or she could demonstrate that the adjudication of guilt was rendered unreliable by counsel's ineffectiveness. *Commonwealth v. Petroski,* 695 A.2d 844, 847 (Pa.Super.1997). Where a defendant was unable to prove that counsel's ineffectiveness affected the reliability of the underlying adjudication, this Court suggested an alternate procedure by which the defendant could petition for permission to appeal *nunc pro tunc. Petroski,* 695

A.2d at 847.[6] Thus, when Appellant's petition was filed, the only means of securing a reinstatement of direct appeal rights that had been lost due to the ineffectiveness of counsel was to proceed outside of the PCRA and request permission to appeal *nunc pro tunc,* unless the ineffectiveness was shown to implicate the truth-determining process. *Petroski,* supra. *See also Commonwealth v. Stock,* 545 Pa. at 20–21, 679 A.2d at 764–765 (holding that counsel's failure to file a direct appeal upon the defendant's request constituted extraordinary circumstances warranting the grant of an appeal *nunc pro tunc* where the defendant was ineligible for relief under the PCRA).

¶ 14 During the pendency of this appeal, the Supreme Court reversed our determination in *Lantzy. Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564 (1999). In reaching this result, the Supreme Court specifically rejected our approval of a framework for obtaining redress outside of the PCRA and held that the PCRA provides the exclusive remedy for post-conviction claims seeking restoration of appellate rights due to counsel's failure to perfect a direct appeal. *Lantzy,* 558 Pa. at 221–225, 736 A.2d at 569–570. We must therefore determine whether our Supreme Court's decision in *Lantzy* retroactively applies in this instance because Appellant did not file a PCRA petition, but instead sought reinstatement of his appellate rights via the procedure outlined by this Court in *Petroski* and its progeny.

¶ 15 With respect to the retroactive application of caselaw, the general rule is that "where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the rule to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication

---

**6.** *Petroski* was later adopted and clarified by this Court's *en banc* decision in *Commonwealth v. Lantzy,* 712 A.2d 288, 291–292 (Pa.Super.1998) (*en banc*), and followed in

*Commonwealth v. Hall,* 713 A.2d 650, 652 (Pa.Super.1998), *appeal granted,* 2000 Pa. Lexis 128, 2000 WL 36072 (January 6, 2000).

up to and including any direct appeal." *Commonwealth v. Cabeza*, 503 Pa. 228, 233, 469 A.2d 146, 148 (1983). *Accord Commonwealth v. Ardestani/Commonwealth v. Metts*, 558 Pa. 191, 196–198, 736 A.2d 552, 555 (1999) (quoting *Cabeza* ).[7] The rule applies with equal force in both civil and criminal cases. *Blackwell v. Commonwealth of Pennsylvania, State Ethics Commission*, 527 Pa. 172, 182, 589 A.2d 1094, 1099 (1991); *Cabeza*, 503 Pa. at 232, 469 A.2d at 148. While the general rule favors retroactive application, a sweeping rule of retroactivity is not always justified. *Blackwell*, 527 Pa. at 182, 589 A.2d at 1099; *Commonwealth v. Tizer*, 454 Pa.Super. 1, 10–11, 684 A.2d 597, 602 (1996). Retrospective application is thus a matter of judicial discretion which must be exercised on a case-by-case basis. *Blackwell*, 527 Pa. at 182, 589 A.2d at 1099. As recognized by our Supreme Court:

> The Constitution neither prohibits nor requires retrospective effect for decisions expounding new constitutional rules affecting criminal trials. . . . The criteria guiding resolution of the question implicate[:] (a) the purpose to be served by the new standards[;] (b) the extent of the reliance . . . on the old standards[;] and (c) the effect on the administration of justice.
>
> The purpose to be served by the new rule should receive primary consideration. Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Conversely, the same standard strongly supports prospectivity for a decision amplifying the evidentiary exclusionary rule, the primary purpose of which is to deter unlawful police conduct.

*Commonwealth v. Miller*, 490 Pa. 457, 472–473, 417 A.2d 128, 136 (1980) *cert. denied,* 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981) (citations and quotation marks omitted). *Accord Blackwell*, 527 Pa. at 183, 589 A.2d at 1099; *Tizer*, 684 A.2d at 602.

¶ 16 The Supreme Court's decision in *Lantzy* overruled prior caselaw and announced a new principle of law. Moreover, the Supreme Court did not indicate that its decision was to be given purely prospective effect; rather, the defendant in *Lantzy* was given the benefit of the Supreme Court's holding. We further note that Appellant preserved his claim, both in the trial court and on appeal.

¶ 17 With respect to the purpose of *Lantzy*, the rule obviously does not implicate the truth-determining function or otherwise cast doubt upon the reliability of Appellant's underlying conviction. It instead appears that the Supreme Court's purpose was to clearly articulate the procedure by which a defendant may collater-

---

**7.** *Ardestani* and *Metts* were consolidated for appellate review. *Ardestani/Metts*, 558 Pa. at 194–196, 736 A.2d at 554. *Ardestani* was a plurality opinion in which Justice Saylor did not participate. *Id.*, 558 Pa. at 200–202, 736 A.2d at 557. The plurality opinion, authored by Justice Zappala, indicated that the rule announced in *Cabeza* should apply in criminal cases. *Id.*, 558 Pa. at 201 n. 8, 736 A.2d at 557 n. 8. Chief Justice Flaherty and Justice Cappy joined Justice Zappala's opinion. Justice Nigro authored a concurring opinion in which he noted that while *Cabeza* sets forth the general rule, sweeping retroactive application is not universally justified. *Id.*, 558 Pa. at 202–203, 736 A.2d at 558. Justice Nigro proceeded to apply the test articulated in *Blackwell* and *Miller, infra. Id.* Justice Castille authored a dissent that was joined by Justice Newman. Justice Castille, like Justice Nigro, does not favor sweeping retroactivity and applied the factors discussed in *Blackwell* and *Miller. Id.*, 558 Pa. at 561–562, 738 A.2d 435. Consequently, the Court was evenly divided on the issue of retroactivity. Plurality opinions issued by our Supreme Court do not constitute binding precedential authority. *In the Interest of O.A.*, 552 Pa. 666, 676 n. 4, 717 A.2d 490, 496 n. 4 (1998); *CRY, Inc. v. Mill Service, Inc.*, 536 Pa. 462, 469, 640 A.2d 372, 376 (1994); *Commonwealth v. Milligan*, 693 A.2d 1313, 1316 (Pa.Super.1997). *Blackwell, Miller* and their progeny thus remain good law which we are bound to follow.

ally challenge the effectiveness of his or her prior counsel in failing to perfect a direct appeal. In addition, litigants' reliance on prior law would have been significant for those individuals to whom it applied, as evidenced by this and other cases.[8]

¶ 18 As previously noted, Appellant chose to file a petition for permission seeking reinstatement of his right to appeal *nunc pro tunc* rather than file a futile post-conviction petition that would have been dismissed under *Petroski*. Appellant specifically cited to *Stock* and *Petroski*, both in his appellate brief and in the memorandum of law filed in support of his petition. Appellant's Brief at 11; Memorandum of Law, filed 9/16/97, at 3. It thus appears that he relied on the existing case-law.

¶ 19 Insofar as the effect on the administration of justice is concerned, we note that sweeping retrospective application would only concern a limited number of individuals who followed this Court's rulings in *Hall*, *Lantzy* and *Petroski*. While the total of affected defendants may be slight in comparison to the volume of criminal cases pending in the courts, retroactive application may leave such persons wholly without a remedy as their ability to obtain PCRA relief may be precluded by the time constraints in 42 Pa.C.S.A. § 9545(b). By comparison, prospective application will have no effect on those who specifically relied on prior practice and caselaw. Consideration of the above factors thus militates against sweeping retroactive application of *Lantzy*.

¶ 20 If we were to apply *Lantzy* retrospectively here, Appellant's sole means of obtaining reinstatement of his direct appeal rights would be to file a petition under the PCRA. *Lantzy*, 558 Pa. at 221–222, 736 A.2d at 569. Unfortunately for Appellant, any such petition would be subject to the time limitation set forth in 42 Pa.C.S.A. § 9545(b). As applied here, Appellant's petition would be untimely unless he could satisfy one of the exceptions in section 9545(b). Application of our Supreme Court's decision in *Lantzy* therefore could result in the affirmance of Appellant's conviction, leaving him without any remedy.

¶ 21 Such a result is unjust. It would serve to unfairly penalize Appellant for adhering to a procedure for obtaining redress that was approved by this Court. Where, as here, a defendant has been misled by the actions of the appellate court, our Supreme Court has not hesitated to grant relief in the interests of justice. *See, e.g., Commonwealth v. Tyson*, 535 Pa. 391, 394–395, 635 A.2d 623, 624–625 (1993) (granting relief in the form of a new trial where the defendant was misled by the Supreme Court's own decision); *Commonwealth v. Powell*, 527 Pa. 288, 292–294, 590 A.2d 1240, 1242–1243 (1991) (discussing the inherent right of the courts to grant relief in the interest of justice whenever it is so required). We therefore decline to retroactively apply our Supreme Court's decision in *Lantzy* in this case.

¶ 22 Viewed in this manner, we find that the trial court abused its discretion by summarily denying Appellant's petition. Appellant averred that he asked trial counsel to file a direct appeal and that trial counsel refused because no grounds for appeal existed. Petition for Permission to File Post–Sentence Motion, Nunc Pro Tunc, filed 9/16/97, at paragraph 2; Appellant's Brief at 12. Trial counsel certainly was not obligated to pursue frivolous claims on appeal. *Lantzy*, 558 Pa. at 226 n. 8, 736 A.2d at 572 n. 8. Nevertheless, he was not permitted to unilaterally withdraw. If counsel believed Appellant's claims to be wholly frivolous, he was obligated to adhere to the procedures set forth in *Anders v. California*, 386 U.S. 738, 87

---

8. Reliance upon the law is further demonstrated in a companion case, *Commonwealth*

*v. Hitchcock*, 749 A.2d 935 (Pa.Super.2000) which is currently pending before this Court.

S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *Commonwealth v. McClendon,* 495 Pa. 467, 434 A.2d 1185 (1981). *Lantzy,* 558 Pa. at 226 n. 8, 736 A.2d at 572 n. 8. As recognized by our Supreme Court, where there is an unjustified failure to file a requested direct appeal, the conduct of counsel falls beneath the range of competence demanded of attorneys in criminal cases and denies the accused the right to the assistance of counsel as guaranteed by the United States and Pennsylvania Constitutions. *Id.,* 558 Pa. at 226–228, 736 A.2d at 572.

¶ 23 We are unable to determine from the certified record submitted to this Court whether Appellant in fact asked trial counsel to file a notice of appeal and whether trial counsel refused this request. Under these circumstances, it is necessary to remand for an evidentiary hearing on this issue at which time Appellant will have the opportunity to prove his claim. As it appears that Appellant is indigent, the trial court shall appoint counsel to represent Appellant. If Appellant proves that his right to a direct appeal was lost due to trial counsel's ineffectiveness, then the trial court shall enter an appropriate order reinstating Appellant's right to a direct appeal *nunc pro tunc.*[9] *Lantzy,* 558 Pa. at 226–228, 736 A.2d at 572–573.

¶ 24 Order reversed. Remanded for further proceedings. Jurisdiction relinquished.

¶ 25 STEVENS, J., files Dissenting Opinion.

STEVENS, J., dissenting.

¶ 1 I respectfully dissent as I disagree with the Majority's conclusion that *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564 (1999), does not apply retroactively.

¶ 2 As the Majority indicates, the Pennsylvania Supreme Court has held that:

[W]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the rule to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.

*Commonwealth v. Cabeza,* 503 Pa. 228, 233, 469 A.2d 146, 148 (1983). The purpose behind the aforementioned holding is that "[e]venhanded decision making requires that similarly situated individuals on direct appeal be treated the same." *Id.* at 232, 469 A.2d at 148.

¶ 3 In the case *sub judice,* as in *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564 (1999), the question on appeal is whether the Post–Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–46, is the exclusive remedy where a defendant alleges that trial counsel was ineffective in failing to perfect a direct appeal. In *Lantzy,* the Supreme Court held that the PCRA is the exclusive remedy, and, therefore, the Supreme Court rejected this Court's conclusion that an appeal *nunc pro tunc* was the proper remedy.

¶ 4 Since there is no meaningful distinction which can be drawn between the facts in the case *sub judice* and the facts in *Lantzy,* the same law should be applied. Moreover, considering the similarity between this case and *Lantzy,* I find that this case may well have been the case which set aside prior law if *Lantzy* had not been decided while this particular case was pending. As such, I find that the law enunciated in *Lantzy* should be applied to the within case.

---

9. In light of our disposition of Appellant's first claim, we need not address his remaining allegations of error. Rather, these matters may be pursued on direct appeal in the event Appellant's rights are reinstated.