**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Frank RIVERA, Appellant.**

Superior Court of Pennsylvania.

Submitted March 4, 2002.
Filed June 19, 2002.

---

Janis Smarro, Philadelphia, for appellant.

Catherine L. Marshall, Assistant District Attorney, Philadelphia, for Com.

Before: TODD, BENDER and POPOVICH, JJ.

OPINION BY BENDER, J.:

¶ 1 This is an appeal by Frank Rivera (Appellant) from an order denying his request to reinstate his appeal rights *nunc pro tunc* that the trial court treated as an untimely petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. C.S. §§ 9541–9546. For the reasons that follow, we affirm.

¶ 2 On October 6, 1986, following a bench trial, Appellant was found guilty of murder in the third degree and possession of an instrument of crime (PIC) in connection with the death of Patrick Trainer on December 11, 1984. After Appellant's trial attorney filed post-verdict motions, Appellant engaged a new attorney, Mark Neff, Esq., who supplemented the post-verdict motions with ineffective assistance of counsel claims concerning trial counsel's representation. Following evidentiary hearings, the trial court denied the post-verdict motions and sentenced Appellant to concurrent terms of five to ten years on the murder conviction and two and one-half to five years for the PIC conviction. No appeal was filed. Prior to the expiration of Appellant's maximum sentence, he was paroled.

¶ 3 In January of 1997, Appellant was convicted of murder in the third degree in connection with the killing of Barry Bishop on April 11, 1992. Appellant was sentenced to life imprisonment pursuant to 42 Pa.C.S. § 9715, which mandates a life sentence for a person convicted of murder in the third degree who has previously been convicted of murder or voluntary manslaughter. Mr. Neff again represented Appellant, this time at the trial for the Bishop killing.

¶ 4 On May 21, 1998, Appellant filed a *pro se* application with Superior Court,

seeking a direct appeal of his 1986 conviction in the Trainer case. By order dated June 29, 1998, the Superior Court denied Appellant's application without prejudice to file a request with the trial court for reinstatement of his appellate rights *nunc pro tunc* in accordance with its decision in *Commonwealth v. Hall*, 713 A.2d 650 (Pa.Super.1998) (*Hall I*). On July 2, 1998, Appellant filed an application for leave to appeal *nunc pro tunc* as suggested by the Superior Court's order. When no response issued from the trial court, Appellant filed a *pro se* notice of appeal on November 7, 1998, again attempting to have his appeal rights reinstated *nunc pro tunc*. The trial court treated the November 7th filing as a post-conviction petition since no PCRA petition had ever been filed. Appellant wrote to the Philadelphia PCRA unit specifically asking that his request be considered outside the framework of the PCRA. An attorney, appointed to represent Appellant, James Lammedola, Esq., filed a petition to appeal *nunc pro tunc* on May 30, 2000. The Commonwealth sought dismissal of Appellant's claim on the basis that it was untimely.

¶ 5 An evidentiary hearing was held on February 8, 2001, at which Appellant and Mr. Neff both testified. Appellant explained that he did not understand what an appeal was at the time he was sentenced on the first conviction. He also indicated that he had told Mr. Neff to file an appeal because he was not satisfied with the verdict.[1] Additionally, Appellant testified that Mr. Neff told him that there was nothing he could do because a mandatory minimum sentence applied to the first conviction. Appellant further stated that Mr. Neff never informed him that a mandatory life sentence would apply if he were again convicted of third degree murder. However, Appellant also indicated that he had trusted Mr. Neff and, therefore, had retained him to represent him at the second trial. Appellant also testified that a fellow inmate provided assistance in preparing the appeal documents to overturn his first conviction and indicated that the life sentence could then also be overturned. The inmate also advised Appellant against filing a PCRA petition.

¶ 6 Mr. Neff, testifying at the February 8th hearing, explained that he had no recollection of any discussion about an appeal, but that he noted that Appellant's English had improved significantly from the time he first represented him.

¶ 7 On April 26, 2001, the trial court denied Appellant's request for reinstatement of his appellate rights *nunc pro tunc*, relying on the Supreme Court's decision in *Commonwealth v. Hall*, 565 Pa. 92, 771 A.2d 1232 (Pa.2001) (*Hall II*). The trial court stated that, because the PCRA governed Appellant's request, the petition was untimely, noting specifically the grace period outlined in the 1995 amendments. 42 Pa.C.S. § 9545(b).[2] The trial court also determined that even if reinstatement of direct appeal rights were available outside the PCRA, Appellant did not establish extraordinary circumstances justifying such relief.

¶ 8 Appellant now appeals to this Court and raises the following issue for our review:

---

1. Although Appellant also claims that he spoke *no* English at the time of his trials, the record reveals that he was assisted by a Spanish speaking attorney and an interpreter.

2. The grace period applies to first PCRA petitions, where the petitioner's judgment of sentence became final on or before the effective date of the 1995 amendments, allowing the petition to be considered timely if filed by January 16, 1997.

Whether the defendant is entitled to the grant of leave to file a notice of appeal *nunc pro tunc* as a result of post-verdict motions counsel's ineffective assistance of counsel based upon his misadvising the defendant concerning an appeal and his failure to honor the defendant's request to file an appeal.

Brief of Appellant at 4.

¶ 9 Appellant argues that because his post-trial motions counsel, Mr. Neff, rendered ineffective assistance of counsel by not properly advising him of his appeal rights following his conviction in the Trainer killing and failing to proceed with an appeal as requested by Appellant, leave to appeal *nunc pro tunc* should be granted. Appellant also points out that in light of this Court's order of June 29, 1998, dismissing his appeal without prejudice to allow him to file for leave to appeal *nunc pro tunc*, he is entitled to the relief that he has requested.

¶ 10 Initially, we note that in *Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564 (1999), our Supreme Court held that restoration of appeal rights lost due to counsel's ineffectiveness was a remedy available under the PCRA. Prior to *Lantzy*, the prevailing view was that such relief could not be obtained under the PCRA, necessitating the seeking of a *nunc pro tunc* appeal. *Hall II* went a step further and indicated that the PCRA subsumed all common law remedies available to provide the same relief and was the exclusive vehicle for obtaining these available remedies. Thus, the Supreme Court eliminated a dual avenue of relief and held that relief that can be granted under the PCRA must be sought under the PCRA.

¶ 11 Appellant recognizes that his petition, on it face, if treated as a PCRA petition, would be untimely pursuant to the November 1995 amendments to the PCRA. 42 Pa.C.S. § 9545(b). However, he points to a number of Superior Court decisions that were handed down following the Supreme Court's decision in *Lantzy*, that allowed requests for the reinstatement of direct appeal rights *nunc pro tunc* to go forward, i.e., *Commonwealth v. Garcia*, 749 A.2d 928 (Pa.Super.2000), and *Commonwealth v. Hitchcock*, 749 A.2d 935 (Pa.Super.2000).[3]

¶ 12 In *Garcia* and in *Hitchcock*, the Superior Court held that *Lantzy* should not be applied retroactively to cases pending at the time *Lantzy* was decided. Thus, the Court concluded that petitions for *nunc pro tunc* relief that would be untimely, if treated as PCRA petitions, could go forward as petitions for *nunc pro tunc* relief. Because Appellant here likewise filed his *pro se* application seeking a direct appeal *nunc pro tunc* prior to July 7, 1999, the date of the *Lantzy* decision, he contends that his appeal rights should also be reinstated.

¶ 13 Thus, the question presented by this appeal is whether *Garcia* and *Hitchcock* remain viable in the face of the later decided *Hall II*. The underlying facts in the *Hall* case to a large extent mirror what occurred in the case presently before us. After a bench trial the defendant, Luke Kane Hall, was found guilty of possession of a controlled substance and possession with intent to deliver a controlled substance. On May 30, 1995, he was sentenced to 9 to 23 months imprisonment and failed to file a direct appeal. Howev-

---

**3.** Appellant also cites *Commonwealth v. Ross*, 763 A.2d 853 (Pa.Super.2000), and *Commonwealth v. Leasa*, 759 A.2d 941 (Pa.Super.2000). However, these cases are distinguishable in that they involved the re-

instatement of PCRA appellate rights *nunc pro tunc*, allegedly lost through the ineffectiveness of counsel for failing to pursue the appeals. These cases do not concern the reinstatement of direct appeal rights.

er, on January 30, 1997, the defendant filed a petition pursuant to the PCRA, claiming trial counsel was ineffective for failing to file a direct appeal. Because the petition was untimely on its face under the 1995 amendments, the trial court dismissed the petition. However, the trial court's order dismissing the petition allowed the defendant thirty days to file a petition for appeal *nunc pro tunc*. The defendant took this route and the Superior Court held that the trial court properly permitted the defendant to pursue his appeal rights *nunc pro tunc* outside the authority of the PCRA format, although it ultimately rejected the defendant's suppression claim. On appeal, the Supreme Court reversed.

¶ 14 In *Hall II,* the Supreme Court reiterated the holding in *Lantzy,* stating that a request for a direct appeal *nunc pro tunc* premised on counsel's alleged ineffectiveness in failing to appeal is a claim that was available to the defendant under the PCRA. "Since such a claim is cognizable under the PCRA, as we held as a matter of statutory interpretation in *Lantzy,* the trial court had no residual common law or statutory authority to entertain the claim except under the strictures of the PCRA." *Hall II,* 771 A.2d at 1236. The *Hall II* court then noted that the trial court, having found the defendant's petition untimely, "had no authority to invite, entertain, and then grant a request for the very same relief deemed outside the authority of the PCRA." *Id.* at 1236. Thus, the Supreme Court, in reaching its decision in *Hall II,* applied *Lantzy* to a petition filed prior to the *Lantzy* decision.

¶ 15 Although *Hall II* did not explicitly overrule *Garcia* and *Hitchcock,* the import of the reasoning and holding in *Hall II* impliedly does just that. In both *Garcia* and *Hitchcock,* the Superior Court relied in part on its decision in *Hall I* to allow the appellants in *Garcia* and *Hitchcock* to proceed outside the PCRA to secure reinstatement of their direct appeal rights lost due to ineffectiveness of counsel. With the Supreme Court's reversal of this Court's decision in *Hall I* and the application of *Lantzy* retroactively, the basis for the decisions in *Garcia* and *Hitchcock* are no longer viable. Therefore, Appellant's reliance on those two decision is unavailing.

¶ 16 Because Appellant's claims could have been brought under the PCRA, those claims had to be brought under the PCRA, and his attempt to circumvent the PCRA is futile. "No other statutory or common law remedy 'for the same purpose' is intended to be available; instead, such remedies are explicitly 'encompassed' within the PCRA." *Hall II,* 771 A.2d at 1235. We are cognizant of the fact that Appellant has not in the first instance had appellate review of this initial conviction. However, *Hall II* clearly indicates that because Appellant failed to pursue his appellate rights in the ensuing years between his final judgment of sentence in 1986 through January 16, 1997, the grace period allowed in the PCRA amendments, he cannot now rectify his omission at this late date.

¶ 17 Accordingly, having found that Appellant's appeal arises from an untimely filed petition, we are compelled to affirm the trial court's order denying relief.

¶ 18 Order AFFIRMED.

¶ 19 Judge TODD concurs in the result.